1  **WO**

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT

7                 FOR THE DISTRICT OF ARIZONA

8

9   Gerald Bollfrass, et al.,            No. CV-19-04014-PHX-MTL

10              Plaintiffs,              **ORDER**

11  v.

12  City of Phoenix, et al.,

13              Defendants.

14

15          Pending before the Court are the Motions to Dismiss Plaintiffs' Second Amended

16  Complaint.  (Doc. 66); (Doc. 80.)  The Motions are fully briefed.[1]  (Doc. 66); (Doc. 76);

17  (Doc. 78); (Doc. 80); (Doc. 85); (Doc. 89.)  For reasons that follow, the Motions to Dismiss

18  are granted in part and denied in part.[2]

19  **I.      BACKGROUND**

20          Plaintiffs Gerald Bollfrass and Frank Czyzewski are married.   (Doc. 57, ¶ 1.)

21  Plaintiffs participate in a federal housing program, administered by the United States

22  Department of Housing and Urban Development ("HUD"), and reside together in Fillmore

23  Gardens, a public housing complex in Phoenix, Arizona.  (*Id.* ¶¶ 2, 10.)  Plaintiffs filed this

24  ---
    [1] The Court feels compelled to say something about the quality of the work product. It
25  could have been better. The briefs lacked organization and there was excessive
    "incorporation by reference" to large sections of previously filed briefs.  In Defendants'
26  briefs, extensive substantive arguments were turned into footnotes and citations did not
    include pin-cites.  This  caused a tremendous additional expenditure of judicial resources.
27  The lawyers on this case are now on notice that, should these problems continue, the Court
    may summarily deny or strike their filings.
28  [2] Neither party requested oral argument. After reviewing the pleadings, however, the Court
    has determined that oral argument would not have aided the Court's decisional process.
    *See* LRCiv 7.2(f).

lawsuit against the following entities and individuals: the City of Phoenix and City of Phoenix Housing Department (collectively "PHD"), which own and operate Fillmore Gardens; Cindy Stotler, the director of PHD; Keon Montgomery, the deputy director of PHD; William Emmerson, the deputy director of PHD from 2014 until August 2017, and an Assistant Phoenix City Prosecutor from August 2017 to the present; Veronica Grittman, a PHD housing manager; Dina Fernandez, a PHD housing supervisor; Angela Hogan, a PHD housing supervisor; James Navarrette, a PHD property manager; Julie Bosshart, a PHD casework supervisor and program administrator, (collectively "PHD Defendants"); Phoenix Police Officer Ryan T. McAbee; Phoenix Police Officer Calvin Martin (collectively the "Officer Defendants"); and Donna Magaard, a resident at Fillmore Gardens. (*Id*. ¶¶ 2, 12-23.) Except for Donna Magaard, who is sued individually, each of the defendants are sued in both their individual and official capacities. (*Id*.) Various spouses of the named Defendants are sued for purposes of obtaining jurisdiction over their marital communities. (*Id*. ¶ 24.)

Plaintiffs originally filed their complaint on May 16, 2019 in the Maricopa County Superior Court, and Defendants removed the action to this Court on May 31, 2019. (Doc. 1.) Plaintiffs filed their First Amended Complaint on June 24, 2019, (Doc. 14), and their Second Amended Complaint ("SAC") on December 19, 2019, (Doc. 57). The SAC alleges seven causes of action related to Defendants' alleged disparate treatment of and retaliation against Plaintiffs for their community activism and sexual orientation. All Defendants, except for Donna Magaard (who is proceeding *pro se*), have moved to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6). (Doc. 66); (Doc. 80).

## II.     FACTUAL ALLEGATIONS

These facts are taken from the well-pled allegations in the SAC, which the Court accepts as true and construes in the light most favorable to Plaintiffs. *North Star Int'l. v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

### A.    The "Clashing of Heads"

Plaintiffs are active members of the Fillmore Gardens community, and previously acted as officers and organizers of the Fillmore Gardens Tenant Council, a resident union. (Doc. 57, ¶ 28.)  Plaintiffs assert that in the course of their community activism through the Tenant Council, they "clashed heads" with the PHD Defendants over various issues, including Plaintiffs' requests for PHD to implement a consistent no-smoking policy, complaints Plaintiffs made to HUD about PHD, and complaints Plaintiffs made to PHD about allegedly unsanitary and dangerous property conditions.  (*Id*. ¶ 31.)

Plaintiff Czyzewski was employed by a third-party vendor to work as a resident assistant at Fillmore Gardens.  (*Id*. ¶¶ 43, 45.)  The SAC alleges that in July 2017 Plaintiff Czyzewski called 911 to obtain medical assistance for a Fillmore Gardens resident, whom Plaintiffs allege was found lying on the floor of his hot apartment, which had a poorly functioning air conditioning unit.  (*Id*. ¶ 50.)  When Plaintiff Czyzewski reported the incident to PHD, Defendant Emmerson (the deputy housing director) accused him of engaging in abusive and harassing communications and threatened to shut down the Tenant Council.  (*Id*. ¶¶ 51, 52, 54-56.)

In July 2017, Defendant Fernandez (a PHD housing supervisor) allegedly refused to respond to Plaintiff Czyzewski's requests for a key that was needed for the Tenant Council's summer picnic.  (*Id*. ¶¶ 58-61.)  Plaintiffs further allege that PHD called the Phoenix Police Department in response to a text sent by Plaintiff Czyzewski to Ms. Fernandez regarding his prior interaction with a maintenance worker over the missing key.  (*Id*. ¶¶ 61-62.)  When police arrived, Defendant Fernandez reported to police that Plaintiff Czyzewski was continually "try[ing] to take control of the housing unit."  (*Id*. ¶ 64.)  Police drafted an incident report, which stated that no crime had occurred.  (*Id*. ¶ 62.)

After that incident, Defendant Fernandez summoned Plaintiff Czyzewski to her office, where Defendant Grittman (the PHD housing manager) and Defendant Emmerson (the deputy housing director) were waiting.  (*Id*. ¶ 66.)  Mr. Emmerson then fired Mr. Czyzewski "on the spot" from his resident assistant position, allegedly stating that he could

fire Mr. Czyzewski for any reason he wanted.  (*Id*. ¶ 67.)

In October 2017, Defendant Fernandez visited Plaintiffs' apartment in response to their complaints about the smell of cigarette smoke seeping into their apartment.  (*Id*. ¶ 69.) When Mr. Czyzewski emailed Defendant Fernandez to follow up on her visit, (*id*. ¶ 71), Defendant Fernandez told him that the odor in Plaintiffs' apartment was due to a "lack of hygiene" and that the "unpleasant" smell was present as soon as Mr. Czyzewski opened the door.  (*Id*. ¶ 72.)

The next week, Plaintiff Bollfrass wrote a letter to the local HUD office about PHD's failure to enforce the no-smoking policy at Fillmore Gardens.  (*Id*. ¶ 74.)  He also sent an email to Defendant Fernandez, complaining about PHD's unfair and inconsistent treatment of Plaintiffs' work order requests. (*Id*. ¶ 75.)  In this email, Mr. Czyzewski suggested that the disparate treatment was due to the maintenance worker's "homophobia." (*Id*. ¶ 76.)  Ms. Fernandez responded to Mr. Bollfrass that his complaints were harassing, threatening, and in violation of his lease agreement.  (*Id*. ¶ 76.)

In November 2017, Mr. Bollfrass sent another letter to HUD about Fillmore Garden's no-smoking policy.  HUD responded by letter in February 2018 that it would monitor PHD's progress.  (*Id*. ¶ 79.)

Mr. Bollfrass complained to HUD about PHD's inconsistent enforcement of the no-smoking policy again on April 15, 2018.  (*Id*. ¶ 86.)  Defendant Montgomery apparently received this letter and cautioned Mr. Bollfrass that his letter to HUD could be considered further harassment and a violation of his lease.  (*Id*. ¶ 87.)  HUD responded to Mr. Bollfrass on July 13, 2018, that PHD had acknowledged his concerns, and that the Fillmore Gardens residents should expect to experience improvements in the day-to-day operations at the facility.  (*Id*. ¶ 89.)

**B.    Arrest and Eviction**

Mr. Bollfrass served as the President of the Tenant Council at Fillmore Gardens. (*Id*. ¶ 93.)  Defendant Magaard, a resident of Fillmore Gardens, served as a board member of the Tenant Council.  (*Id*. ¶ 90.)  The SAC alleges that in 2018, the Tenant Council began

having "problems" with Ms. Magaard, which caused Mr. Bollfrass to resign as President. (*Id*. ¶ 93.)  Plaintiff Czyzewski succeeded Mr. Bollfrass as President.  (*Id*. ¶ 94.)  But he also purportedly had "consistent problems" with Ms. Magaard.  (*Id*. ¶ 96.)

At the June 21, 2018 Tenant Council meeting, a verbal altercation occurred between Plaintiff Czyzewski and Defendant Magaard.  (*Id*. ¶ 99.)  After the altercation, allegedly at Defendant Fernandez's direction, Defendant Navarrette (the PHD property manager) told Ms. Magaard to call the police, which she did.  (*Id*. ¶ 102.)  Officers McAbee and Martin (the Officer Defendants) responded to the call and met with Ms. Magaard, Defendant Fernandez and Defendant Bosshart in Ms. Fernandez's office.  (*Id*. ¶ 104.)  This conversation was captured on video by Officer McAbee's body camera. (*Id*. ¶ 105.)

Ms. Magaard drafted an incident report regarding the altercation but told the Officer Defendants that she did not desire prosecution. (*Id*. ¶¶ 111, 113.)  Defendant Fernandez directed Ms. Magaard to "take her time" with the incident report, and that she could have Ms. Fernandez review it before submitting it.  (*Id*. ¶ 112.)    After Ms. Magaard left the office, Ms. Fernandez proceeded to tell the Officer Defendants that Defendant Montgomery had previously fired Mr. Czyzewski and that she was in the process of typing an eviction notice to him.  (*Id*. ¶¶ 116, 117.)  At the Officer Defendants' request, Ms. Fernandez then reenacted the altercation that had occurred between Mr. Czyzewski and Ms. Magaard, mocking the way that Mr. Czyzewski held his hands.  (*Id*. ¶ 118.)  When the Officer Defendants inquired about the Tenant Council, Defendant Fernandez acknowledged that there would be a lot of hoops to jump through with HUD to disband it. (*Id*. ¶ 132.)

The Defendant Officers asked Defendant Fernandez if she wanted to press charges against Mr. Czyzewski, (*id*. ¶ 127), and when Ms. Fernandez reached out to Ms. Grittman for guidance, Ms. Grittman responded in a text message that "an arrest guarantees the eviction."  (*Id*. ¶ 133.)  Defendants Fernandez and Bosshart then agreed that they desired prosecution for disorderly conduct and Ms. Fernandez listed herself as a victim in the incident report.  (*Id*. ¶ 145.)

1    The Officer Defendants arrested Mr. Czyzewski, who was taken to jail and charged
2    with threatening and intimidating and disorderly conduct.  (*Id.* ¶ 148.)  Defendant
3    Emmerson, who was previously the deputy director of PHD, was the original prosecutor in
4    Mr. Czyzewski's criminal case. (*Id.* ¶ 154.)  As a result of Mr. Czyzewski's arrest and the
5    criminal charges, Plaintiffs were served with an eviction notice and were temporarily
6    evicted from Fillmore Gardens for two months.  (*Id.* ¶¶ 153, 156.)  Mr. Czyzewski was
7    ordered by the municipal court judge not have any contact with Ms. Fernandez or Ms.
8    Bosshart during the pendency of the criminal case.  (*Id.* ¶ 153.)

9         Plaintiffs requested a formal hearing on the eviction notice.  (*Id.* ¶ 162.)  When
10   Plaintiffs asked PHD for the documents on which it intended to rely during the eviction
11   hearing, PHD and Defendant Navarrette allegedly refused to provide them.  (*Id.* ¶ 163.)
12   The formal eviction hearing was held on July 31, 2019, and the hearing panel unanimously
13   set aside Plaintiffs' eviction notice.  (*Id.* ¶ 167.)   Plaintiffs maintain that other residents
14   who engaged in more serious altercations involving physical violence were not evicted by
15   PHD or arrested and prosecuted like Mr. Czyzewski was.  (*Id.* ¶¶ 157, 167.)

16        On August 1, 2018, Defendant Magaard applied for an injunction against
17   harassment against Plaintiff Czyzewski, which Plaintiffs allege was done at the urging of
18   PHD.  (*Id.* ¶ 172.) Ms. Magaard's application for the injunction was denied.

19        **C.    Alleged Retaliation and Disbandment of the Tenant Council**

20        The SAC alleges that the PHD Defendants continued to retaliate against Plaintiffs
21   after they prevailed in the eviction hearing.  (*Id.* ¶ 174.)  On August 28, 2018, Plaintiff
22   Czyzewski emailed Defendants Montgomery, Fernandez, Stotler, Bosshart and Fernandez,
23   stating that he intended to proceed with a Tenant Council Meeting despite Management's
24   announcement to the Fillmore Gardens residents that the Tenant Council board was
25   defunct.  (*Id.* ¶ 178.)

26        The next week, Defendant Fernandez posted a letter around Fillmore Gardens,
27   (which was copied to Defendants Stotler, Grittman, Navarrette and Bosshart), accusing
28   Plaintiff Czyzewski of forcing residents to participate in Tenant Council and questioning

- 6 -

1  the Council's validity. (*Id*. ¶¶ 179, 180, 183.)  The letter also demanded evidence of a fully

2  elected board before the Tenant Council could take further action; and it required that the

3  Tenant Council produce all financial and meeting records to PHD. (*Id*. ¶ 182.)

4          In February 2019, Plaintiffs were issued a 14-day notice of termination of their lease

5  for past due rent, even though Plaintiffs maintain that their rent had been paid. (*Id*. ¶ 184.)

6  When Plaintiffs met with Defendant Hogan (PHD housing supervisor) to discuss the

7  termination notice, she proceeded to conduct a "supervisory audit" of Plaintiffs' financial

8  statements to determine whether Plaintiffs were receiving additional income that would

9  make them ineligible for public housing assistance. (*Id*. ¶¶ 188-194.)  Plaintiffs claim that

10 this audit was not provided for in PHD or HUD regulations. (*Id*. ¶ 194.)

11         Even though this action was not filed until May 2019, HUD sent a letter to Plaintiffs

12 in March 2019, indicating that it could no longer intervene to assist Plaintiffs with their

13 complaints due to their lawsuit against the City of Phoenix. (*Id*. ¶ 197.)  Plaintiffs maintain

14 that no litigation was pending at that time and that PHD lied to HUD about the existence

15 of a lawsuit to deprive Plaintiffs of HUD oversight. (*Id*. ¶ 198.)

16         Plaintiffs claim that these collective actions by the PHD destroyed the Tenant

17 Council and caused the Fillmore Gardens residents to fear further participation or

18 organization in the Fillmore Gardens community. (*Id.* ¶ 203.)

19 **III.   LEGAL STANDARDS**

20         Rule 12(b)(6) authorizes the Court to dismiss a claim for "failure to state a claim

21 upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion tests

22 the legal sufficiency of the claims asserted in the complaint, which is a question of law.

23 *North Star Int'l.,* 720 F.2d at 580.  To avoid a Rule 12(b)(6) dismissal, a complaint need

24 not contain detailed factual allegations; rather, it must plead "enough facts to state a claim

25 to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Facial

26 plausibility exists if the pleader pleads factual content that allows the Court to draw the

27 reasonable inference that the defendant is liable for the misconduct alleged. *Id*.  Plausibility

28 does not equal probability, but it requires more than a sheer possibility that a defendant has

1    acted unlawfully. *Id*.

2    **IV.    ANALYSIS**

3         **A.    Count One (42 U.S.C. § 1983)**

4         In Count One, Plaintiffs claim pursuant to 42 U.S.C. § 1983 that all Defendants

5    violated their rights under the First, Fourth and Fourteenth Amendments.  Section 1983

6    provides that:

7              [e]very person who, under color of any statute, ordinance,
               regulation, custom, or usage, of any State or Territory or the
8              District of Columbia, subjects, or causes to be subjected, any
               citizen of the United States or other person within the
9              jurisdiction thereof to the deprivation of any rights, privileges,
               or immunities secured by the Constitution and laws, shall be
10             liable to the party injured in an action at law, suit in equity, or
11             other proper proceeding for redress . . . .

12        In order to recover under § 1983, the plaintiff must show that the conduct allegedly

13   causing the deprivation of a federal right is fairly attributable to state actors.  *Caviness v.*

14   *Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010).

15        **1.    Defendant Magaard**

16        Preliminarily, the Court notes the inadequacy of the § 1983 claim against Ms.

17   Magaard (who is a private resident of Fillmore Gardens) and orders it dismissed.  *See*

18   *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (court may on its

19   own initiative "note the inadequacy of the complaint and dismiss it for failure to state a

20   claim"). A private person acts "under color of" state law when involved in a conspiracy

21   with state officials to deprive someone of federal rights. *See Tower v. Glover*, 467 U.S.

22   914, 920 (1984).  To establish liability for a conspiracy between a private actor and a state

23   actor, the plaintiff must show an agreement or meeting of the minds to violate constitutional

24   rights. *Crowe v. Cty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010).  To be liable, each

25   participant in the conspiracy must at least share the common objective of the conspiracy.

26   *Id*.

27        Here, the alleged conspiracy between Ms. Magaard and the PHD Defendants centers

28   on Ms. Magaard's statements to police after her verbal altercation with Mr. Czyzewski,

1   and her request for an injunction against harassment against Mr. Czyzewski after Plaintiffs

2   prevailed in the eviction proceedings.  (*See* Doc. 57, ¶ 172.)  Plaintiffs also state that Mr.

3   Bollfrass resigned as President of the Tenant Council because "he believed" Ms. Magaard

4   and Ms. Fernandez were trying to remove him.  (*Id.* ¶ 93.)  With regard to Mr. Czyzewski's

5   arrest, the SAC does not allege facts to show that Ms. Magaard prevented the Officer

6   Defendants from acting on their own judgment or discretion when they arrested him—in

7   fact, Ms. Magaard told the Officer Defendants that she did not desire prosecution.  Nor

8   does the SAC show a "meeting of the minds" between Ms. Magaard and the PHD

9   Defendants to violate Plaintiffs' constitutional rights through the unsuccessful pursuit of

10  an injunction against harassment or through the change in Tennant Council leadership from

11  Mr. Bollfrass to Mr. Czyzewski.  Accordingly, the Court finds that the SAC failed to plead

12  that Ms. Magaard was acting "under color of law."  Because § 1983 excludes from its reach

13  purely private conduct, Count One against Ms. Magaard is **dismissed**.

### 2.    Fourth Amendment

15  Mr. Czyzewski alleges that the Officer Defendants arrested him without probable

16  cause in violation of the Fourth Amendment.  (Doc. 57, ¶ 215.)  The Officer Defendants

17  argue that Mr. Czyzewski is barred from disputing probable cause in this action because

18  he entered into a diversionary plea agreement in municipal court for events surrounding

19  his altercation with Ms. Magaard, admitting that he committed disorderly conduct.  (*See*

20  Doc. 66-2); (Doc. 80 at 6.)  The Officer Defendants alternatively assert that there was

21  probable cause to arrest Mr. Czyzewski for disorderly conduct.  The Court declines to find,

22  based on language contained in Mr. Czyzewski's diversionary plea agreement, that he is

23  estopped from arguing in this action that the Officer Defendants arrested him without

24  probable cause.  In any event, the Court agrees with the Officer Defendants that there was

25  probable cause for Mr. Czyzewski's arrest.

26  Preliminarily, in ruling on the Motion to Dismiss, the Court has considered Mr.

27  Czyzewski's "Positive Alternatives Diversion Program Plea Agreement (Anger

28  Management)," which Defendants attached as Exhibit 2 to the Motion to Dismiss (Doc.

66-2).[3]  Mr. Czyzewski pled guilty in municipal court to disorderly conduct, but the plea agreement stated that the charges against him would be dismissed and no judgment of conviction would be entered if he complied with the terms of the plea agreement, including attending a diversion program.  (Doc. 66-2 at 4.)   The parties in this action agree that Mr. Czyzewski completed the terms of the diversion program, and that the criminal charges against him were dismissed without prejudice for that reason.  (Doc. 76 at 3); (Doc. 66 at 4-5.)

Nonetheless, the Officer Defendants argue that paragraph six of Mr. Czyzewski's plea agreement bars his Fourth Amendment claim.  Paragraph six of the plea states that the defendant "is precluded from denying in any civil proceeding the essential allegations for the criminal offense of which he/she is convicted.  The defendant further understands that a guilty or no contest plea will result in a conviction."  (Doc. 66-2 at 2.)  A.R.S. § 13-807 states the same.  *See* A.R.S. § 13-807 (a defendant who is *convicted* in a criminal proceeding is precluded from subsequently denying in any civil proceeding the essential allegations of the criminal offense).  Because the criminal charges against Mr. Czyzewski were dismissed, and because neither the plea agreement nor A.R.S. § 13-807 precludes him from denying the allegations of the underlying offense in the absence of a conviction, the Court finds that Mr. Czyzewski's Fourth Amendment claim against the Officer Defendants is not barred.

The Court now turns to whether the SAC pleads plausible facts to show that the Officer Defendants lacked probable cause to arrest Mr. Czyzewski.  "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested.*" United States v. Lopez*, 482 F.3d 1067,

---

[3] While review of a motion brought pursuant to Rule 12(b)(6) is generally limited to the complaint, *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993), courts may "consider certain [other] materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment," *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  The Court has considered the diversionary plea agreement submitted as Exhibit 2 to the Motion to Dismiss because it is a certified copy of an official and original Phoenix Municipal Court electronic record.  *(See* Doc. 66-2.)

1072 (9th Cir.2007) (*citing Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  In support of their Motion to Dismiss, the Officer Defendants submitted a transcript of their interactions with Mr. Czyzewski, which were captured by Officer McAbee's body camera.[4]  (Doc. 80 at 5-9.)  The transcript reflects that Mr. Czyzewski told the Officer Defendants there were forty-nine people in the Tenant Council meeting who witnessed the verbal altercation between him and Ms. Magaard, and that he knew the argument was disruptive to them.  Mr. Czyzewski also admitted to the officers that he raised his fist and hit the table out of frustration before approaching Ms. Magaard while he yelled.  (Doc. 80-1 at 56.)  Ms. Fernandez, Ms. Bosshart, and Ms. Magaard reported the same.

The SAC does not provide a counternarrative to the events reflected in the transcript.  In fact, Plaintiffs do not dispute that Mr. Czyzewski made voluntary statements to the Officer Defendants, confessing to the crime of disorderly conduct; nor do they dispute that the transcript, taken as a whole, evidences probable cause for Mr. Czyzewski's arrest.  (Doc. 85 at 6.)  Instead, Plaintiffs argue that the Officer Defendants obtained Mr. Czyzewski's confession in violation of *Miranda v. Arizona*, and that the Officers therefore improperly based their determination of probable cause on his statements.  *See Miranda*, 384 U.S. 436, 479 (1966) (requiring certain warnings before custodial interrogation).  (Doc. 85 at 6.)

The alleged *Miranda* violation is inapposite for two reasons.  First, any purported *Miranda* violation is not actionable under § 1983 unless the statements were used in a criminal proceeding, which did not occur in this case.  *See Chavez v. Martinez*, 538 U.S. 760 (2003).  Second, the Ninth Circuit has recognized that voluntary statements may be used to determine whether probable cause existed, even if the suspect should have been read *Miranda* warnings first. *See United States v. Patterson*, 812 F.2d 1188, 1193 (9th Cir. 1987) (finding in criminal case that voluntary statements taken in violation of *Miranda* may be used to establish probable cause); *see also Burrell v. Virginia*, 395 F.3d 508, 515

---

[4] Plaintiffs do not dispute the accuracy of the transcript.  Because Plaintiffs have incorporated the body camera footage by reference in the Complaint and rely on the interactions depicted therein to support their claims, the Court will consider the transcript without converting the motion to one for summary judgment. *Ritchie*, 342 F.3d at 908.

(4th Cir. 2005) (finding in a § 1983 action that officers properly considered suspect's refusal to provide insurance information when evaluating probable cause, even though Fifth Amendment may have barred admission of suspect's refusal in criminal case).

Here, the undisputed evidence reflects that Mr. Czyzewski admitted to the Officer Defendants that he had committed disorderly conduct.  (Doc. 80-1 at 51); *see* A.R.S. § 13-2904(A)(1) (disorderly conduct occurs where a person, with intent to disturb the peace or quiet of another person, or with knowledge of doing so, engages in fighting, violent or seriously disruptive behavior).   The statements from Ms. Fernandez, Ms. Bosshart, and Ms. Magaard reflect the same.  Because the alleged *Miranda* violation does not alter the probable cause analysis, the Court finds that Plaintiffs have not pleaded plausible facts to show that the Officer Defendants arrested Mr. Czyzewski without probable cause.  Therefore, the Motion to Dismiss the Fourth Amendment § 1983 claim against the Officer Defendants and their spouses is **granted**.

> **3.** **First Amendment**
>
> **a.** **Impeding Plaintiffs' Efforts to Organize and Associate**

Plaintiffs allege that Defendants impeded their efforts to organize and associate. Among the rights protected by the First Amendment are the rights of individuals to speak and petition the government for the redress of grievances, and to engage in group efforts toward those ends without interference by the State.  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984).  Government action that infringes upon these freedoms may take numerous forms, including action that seeks to impose penalties or withhold benefits from individuals because of their membership in a disfavored group, or trying to interfere with the internal organization or affairs of the group.  *See id.* (citing cases).  Plaintiffs claim that Defendants have impeded their efforts to organize by engaging in conduct that was designed to scare Plaintiffs from participating and organizing in the Fillmore Gardens community, like subjecting Plaintiffs to eviction proceedings and supervisory audits, and ignoring their work order requests.  (Doc. 57, ¶ 214.)

Defendants respond that Plaintiffs have failed to allege the Tenant Council was

engaged in speech aimed at the redress of grievances when the alleged adverse actions were taken.  (Doc. 66 at 15.)  The Court does not agree. The SAC asserts that the Fillmore Gardens Tenant Council is a resident union, and that Plaintiffs, as members of that group, disputed PHD's funding of the Tenant Council, reported unsanitary and dangerous property conditions to PHD, sought to have the no-smoking policy enforced, and made complaints to HUD about PHD.  (Doc. 57, ¶ 28)   These are all forms of speech plausibly construed as petitions to the government for redress of grievances, and a correlative freedom to engage in group efforts toward that end is guaranteed by the First Amendment.  *Roberts*, 468 U.S. at 622.  The Motion to Dismiss Plaintiffs' § 1983 First Amendment Association claim is **denied**.

### b.    Retaliation

The First Amendment "forbids government officials from retaliating against individuals for speaking out" against the Government.  *Blair v. Bethel Sch. Dis.*, 608 F. 3d 540, 543 (9th Cir. 2010). To recover under § 1983 for such retaliation, a plaintiff must prove: (1) he engaged in constitutionally protected activity; (2) as a result, he was subject to adverse action that would chill a person of ordinary firmness from continuing to engage in the activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.  *Id*. (citations and quotations omitted).  Plaintiffs allege that Defendants retaliated against them for exercising their First Amendment rights. The alleged retaliations include firing Mr. Czyzewski, subjecting Plaintiffs to eviction proceedings, evicting Plaintiffs from their public housing for two months during the pendency of the eviction proceedings, disbanding the Tenant Council, depriving Plaintiffs of HUD oversight by misrepresenting that Plaintiffs had an active lawsuit against PHD; arresting Mr. Czyzewski, and prosecuting Mr. Czyzewski.  For reasons that follow, the Court finds that Plaintiffs have stated a § 1983 First Amendment retaliation claim.  The Court however dismisses Plaintiffs' retaliatory arrest claims against the individual Defendants and Plaintiffs' retaliatory prosecution claims against all Defendants.

1

*i.      Protected Activity and Adverse Action*

2

Defendants argue that Plaintiffs have failed to identify how they engaged in

3

constitutionally protected activity or that they suffered any adverse action. (Doc. 66 at 14);

4

(Doc. 80 at 2.)  For reasons previously stated, the SAC sufficiently alleges that Plaintiffs

5

engaged in constitutionally protected activities under the First Amendment.   The SAC

6

further alleges that due to Plaintiffs' engagement in these constitutionally protected

7

activities, Defendants terminated Mr. Czyzewski's public employment, subjected them to

8

eviction proceedings, evicted Plaintiffs from their public housing for two months,

9

disbanded the Tenant Council, deprived them of HUD oversight by misrepresenting that

10

Plaintiffs had an active lawsuit against PHD, and ignored their work order requests.  These

11

are all adverse actions for which the SAC sufficiently establishes a causal connection to

12

the constitutionally protected activity.  The Motion to Dismiss Plaintiffs' § 1983 First

13

Amendment Retaliation claim, with respect to these alleged adverse actions, is **denied**.

14

*ii.      Noerr-Pennington Doctrine*

15

Defendants alternatively argue that Plaintiffs' claim about retaliatory eviction

16

proceedings is barred by the *Noerr-Pennington* doctrine, which provides that those who

17

petition a department of the government for redress are generally immune from statutory

18

liability for their petitioning conduct. (Doc. 66 at 15-16); *Sosa v. DIRECTV, Inc.*, 437 F.3d

19

923, 929-31 (9th Cir. 2006).  As the Court understands it, Defendants' argument is that the

20

eviction process against Plaintiffs had the potential to result in litigation (if for example,

21

Plaintiffs refused to vacate the premises), and that therefore the Court should treat the

22

eviction process as an exercise of *Defendants'* First amendment rights.  (Doc. 66 at 15.)

23

The Court is not persuaded.  Defendants cite no case for their proposition that the initiation

24

of eviction proceedings by a government employee during the course of government

25

employment is an activity protected by the First Amendment. (*Cf.* Doc. 78 at 9.) The

26

Motion to Dismiss Plaintiffs' § 1983 First Amendment Retaliation claim on this basis is

27

**denied**.

28

*iii.*     <u>*Hartman*</u> *doctrine*

Defendants move to dismiss Plaintiffs' retaliatory prosecution claim pursuant to the *Hartman* doctrine, which requires that the plaintiff plead and prove the absence of probable cause when claiming that he was prosecuted in retaliation for the exercise of his First Amendment rights. *Hartman v. Moore*, 547 U.S. 250, 256 (2006).  A § 1983 action for retaliatory prosecution is not brought against the prosecutor, "who is absolutely immune from liability for the decision to prosecute." *Id*. at 262 (*quoting Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)).  Instead, in a retaliatory prosecution claim, the defendant will be a non-prosecuting official who may have influenced the prosecutorial decision.  *Hartman,* 547 U.S. at 256. The plaintiff in a retaliatory prosecution case must show that the non-prosecuting official acted in retaliation and that he induced the prosecutor to bring charges that would not have been initiated without his urging.  *Id*.  This requires the plaintiff to plead and prove an absence of probable cause.  *Id*. at 265-266.  For reasons already stated, Plaintiffs failed to plead facts that plausibly show there was no probable cause to charge Mr. Czyzewski with disorderly conduct.[5]  It is therefore ordered **granting** Defendant's Motion to Dismiss Plaintiffs' § 1983 retaliatory prosecution claim.

*iv.*     *Retaliatory Arrest*

The SAC alleges that Mr. Czyzewski was arrested in retaliation for the exercise of his First Amendment rights.  Mr. Czyzewski brings this claim against the individual PHD Defendants, PHD, and the City of Phoenix.  Where a plaintiff alleges retaliatory arrest against an official in their individual capacity, he must plead and prove the absence of probable cause.  *Nieves v. Bartlett*, --- U.S. ---, 139 S. Ct. 1715, 1724 (2019) (extending *Hartman* to the retaliatory arrest context).  Where a plaintiff alleges that the wrongful arrest was the result of "an official policy motivated by retaliation," however, he need not plead and prove the absence of probable cause. *Lozman v. City of Rivera Beach*, 585 U.S. ---, 138 S. Ct. 1945, 1947-48 (2018) (probable cause does not categorically bar a plaintiff from

---

[5] Because the Court finds that Plaintiffs failed to plead an absence of probable cause, the Court need not decide Defendants' alternate argument that they are entitled to absolute immunity for statements they made to police under *Ledvina v. Cerasani*, 146 P.3d 70, 75 (App. 2006).  (Doc. 66 at 13).

1    suing municipality for retaliatory arrest if plaintiff was arrested pursuant to official

2    municipal policy of retaliation).  For reasons already stated, the Court finds that the SAC

3    failed to plead and prove the absence of probable cause for Mr. Czyzewski's arrest.

4    Therefore, the Motion to Dismiss Plaintiff Czyzewski's retaliatory arrest claim against the

5    individual Defendants is **granted**.

6         Even though there was probable cause to arrest Mr. Czyzewski, his retaliatory arrest

7    claim against the City of Phoenix will survive the Rule 12(b)(6) Motion to Dismiss if the

8    SAC has pleaded facts that show Mr. Czyzewski was arrested as the result of an official

9    policy motivated by retaliation.  *Lozman*, 585 U.S. at ---, 138 S. Ct. at 1947-48.  While the

10   Supreme Court in *Lozman* did not decide whether the plaintiff's arrest was taken pursuant

11   to an official policy, *id*. at ---, 138 S. Ct. at 1951, it allowed the retaliatory arrest claim to

12   proceed against the City, even though there was probable cause for the plaintiff's arrest,

13   based on five considerations: (1) the plaintiff had alleged more governmental action than

14   simply his arrest—he claimed that the City "itself retaliated against him pursuant to an

15   'official municipal policy' of intimidation;" (2) the plaintiff alleged that the retaliation plan

16   was premeditated; (3) the plaintiff had objective evidence of a policy motivated by

17   retaliation; (4) the alleged official policy of retaliation was for prior, protected speech

18   unrelated to the criminal offense for which the arrest was made; and (5) the right to petition

19   the government for redress of grievances is "one of the most precious of the liberties

20   safeguarded by the Bill of Rights."  *Id*. at ---, 138 S. Ct. at 1954-55; *see also DeMartini v.*

21   *Town of Gulf Stream*, 942 F.3d 1277, 1307 (11th Cir. 2019) (interpreting *Lozman* to have

22   established a five-pronged exception to *Hartman*'s no-probable cause requirement).

23        Applying these *Lozman* factors, the Court finds that Plaintiffs have stated plausible

24   facts that, if true, would establish that Mr. Czyzewski was arrested as the result of an

25   official policy motivated by retaliation.  First, Plaintiffs have alleged more governmental

26   action than simply Mr. Czyzewski's arrest.  They alleged that PHD engaged in an official

27   policy of intimidation and retaliation by issuing lease violation notices, subjecting

28   Plaintiffs to financial audits, initiating eviction proceedings, firing Mr. Czyzewski,

mishandling work order requests, and hindering the Tenant Council's ability to organize. Second, Plaintiffs allege that the retaliation was premeditated and spanned the course of many months.   Third, Plaintiffs have objective evidence of retaliation—Defendant Fernandez told the Officer Defendants she wanted them to arrest Mr. Czyzewski for disorderly conduct based on a text message she received from Defendant Grittman (the PHD housing manager) that the arrest would guarantee Mr. Czyzewski's eviction from Fillmore Gardens.  Fourth, Plaintiffs allege that Mr. Czyzewski was arrested in retaliation for his prior, protected speech and associations (not because he was engaging in protected speech at the time of his arrest).  Fifth, Plaintiffs allege that PHD retaliated against them to hinder them from petitioning the government for redress of grievances.  Accordingly, the Court finds that Plaintiffs have stated a claim for retaliatory arrest against the City of Phoenix, even though the Officer Defendants had probable cause to arrest him.  The Motion to Dismiss Count Plaintiffs' retaliatory arrest claim against the City of Phoenix is **denied**.

### 4. Fourteenth Amendment

#### a. Procedural Due Process

Plaintiffs claim that Defendants violated their Fourteenth Amendment right to due process by not allowing Plaintiffs to review records prior to their formal eviction hearing and by terminating Mr. Czyzewski's employment as a resident assistant without notice or opportunity to be heard. (Doc. 57 at 40, ¶ 215.)   "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendments." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  A § 1983 claim based on procedural due process has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process. *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

Regarding Plaintiffs' claim that Defendant Fernandez violated Plaintiffs' rights to due process by refusing to show them in advance of the eviction hearing the documents she submitted, (Doc. 57, ¶ 257), the Court finds that Plaintiffs have failed to state a claim

upon which relief may be granted.    Plaintiffs have not alleged that the documents Ms. Fernandez presented were any different than the documents Mr. Czyzewski himself obtained in the criminal case.  Furthermore, Plaintiffs' eviction notice was ultimately rescinded after the eviction hearing during which the purported due process violation occurred.  Defendants' Motion to Dismiss this portion of Plaintiffs' § 1983 Fourteenth Amendment claim is **granted**.

Turning to Mr. Czyzewski's allegation that he was fired from his Resident Assistant position without the opportunity to be heard, the Court finds that Plaintiffs have alleged enough facts to state a claim to relief that is plausible on its face. Plaintiffs allege that the third-party vendor who employed Mr. Czyzewski as a resident assistant at PHD had a policy for "just cause" termination and an intermediate step involving discipline if employees were not in compliance with the policy.  Plaintiffs claim that PHD adhered to the same policies.  (Doc. 57, ¶ 46.)  Notwithstanding these policies, Mr. Czyzewski was apparently fired "on the spot" by Defendant Emmerson, who told Defendant that he could fire Mr. Czyzewski for any reason he wanted.   According to the SAC, Defendant Emmerson also told Plaintiffs not to sue him.  (*Id.* ¶ 67.)  If Mr. Czyzewski was a public employee with a protected property interest in his employment, he was due some pre-termination process before he was terminated.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).  Defendants' Motion to Dismiss this portion of Plaintiffs' § 1983 Fourteenth Amendment claim is **denied**.

### b.    Equal Protection

Plaintiffs claim that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by subjecting them to disparate treatment because of their sexual orientation.  The Equal Protection Clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV. The Ninth Circuit has held that § 1983 claims based on equal protection violations must "plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d

1022, 1026 (9th Cir. 1998).

Here, Plaintiffs allege acts of discrimination based on their sexual orientation, but the facts alleged do not show unlawful discrimination or support an inference of discriminatory intent.  The allegations in the SAC related to alleged discrimination on the basis of sexual orientation include Dina Fernandez's mocking Mr. Czyzewski for the way he held his arms during the altercation with Ms. Magaard;  Ms. Fernandez's reaction to Plaintiffs' concerns about the maintenance worker's homophobia, and Defendant Fernandez's statement about Plaintiffs' "lack of hygiene," when she went to investigate the smell of cigarette smoke in their apartment.  These facts do not demonstrate an inference of discriminatory intent or disparate treatment under the Equal Protection clause. Defendant's Motion to Dismiss Plaintiffs' § 1983 claim under the Equal Protection Clause of the Fourteenth Amendment is **granted**.

**5**.   **Defendant Stotler**

Defendant Stotler moves to dismiss all individual lability claims asserted against her in Count One.  (Doc. 80 at 2.)  She argues that the allegations in the SAC fail to establish she was personally involved in the alleged constitutional deprivations.  (Doc. 2-3.)  The Court disagrees.

A supervisor may be held liable under § 1983 for her own culpable action or inaction in the training, supervision, or control of her subordinates; for her acquiescence in the constitutional deprivations of which the complaint is made; or for conduct that showed reckless or callous indifference to the rights of others. *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations and quotations omitted); *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (defendant can be held liable for failure to act).  Here, the SAC alleges that Defendant Stotler was the director of PHD and approved and oversaw the actions of the PHD Defendants.  The SAC further claims that Ms. Stotler was aware of the alleged impediments to Plaintiffs' efforts to organize and engage in activism through the Tenant Council.  (Doc. 57, ¶ 178) (Plaintiff Bollfrass emailing Defendant Stotler that the Fillmore

Gardens Management told residents that the Resident Council was defunct); (*id.* ¶ 183) (Defendant Fernandez posting a letter at Fillmore Gardens, which was copied to Ms. Stotler, stating that the Tenant Council would no longer be recognized as a duly elected resident council). The Court finds that Plaintiffs have pleaded sufficient facts to state a claim for individual supervisory liability against Ms. Stotler.  Defendant Stotler's Motion to Dismiss the remaining individual capacity claims against her is **denied**.

>   **B.   Count Two (Unconstitutional Policies, Customs, and Failure to Train)**

In a § 1983 case, a city or municipality cannot be subject to liability unless the harm was caused in the implementation of "official municipal policy."  *Lozman*, --- U.S. ---, 138 S. Ct. at 1951 (*quoting Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978)).  In Count Two, Plaintiffs allege that Defendants PHD, Stotler, Montgomery, Emmerson, Grittman, Fernandez, Hogan, Navarrette, and Bosshart were official policy makers for PHD, and as such, that they had the authority and responsibility to establish PHD policies, and to train officers, agents, and employees of PHD.  (Doc. 57, ¶ 226.) Plaintiffs further allege that PHD has a policy of prohibiting constitutionally protected activity, (*id.* ¶ 230) and that the prior Tenant Council was disbanded after PHD took similar retaliatory actions against it and its board members, (*id.* ¶ 38.)  To establish knowledge, Plaintiffs point to an email they sent to the PHD Defendants, including Ms. Stotler (the Director of PHD), complaining that Fillmore Gardens Management told residents the Resident Council had been disbanded (Doc. 57, ¶ 178), as well as a letter from Defendant Fernandez to the Fillmore Garden residents, which was copied to various PHD supervisors and managers and stated the same. (*Id.* ¶ 183.)

Defendants move to dismiss Count Two, asserting that Plaintiffs failed to identify any specific systemic and widespread policies, customs, or trainings of the City of Phoenix that are constitutionally deficient.  (Doc. 80 at 4.)  The Supreme Court has rejected a heightened pleading requirement for § 1983 municipal liability claims, and the "plausibility" standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), has not affected federal courts' continued rejection of a heightened standard.  *See Leatherman v.*

*Tarrant County*, 507 U.S. 163, 168 (1993) (rejecting a more demanding rule for § 1983 claims than for pleading other kinds of claims for relief); *see Schaeffer v. Whitted*, 121 F. Supp. 3d 701, 718 (W.D. Tex. 2015) (noting the uncertainty of *Leatherman*, post *Iqbal-Twombly*, but allowing claim to proceed where defendant municipality was provided fair notice and allegations were not boilerplate); *see also Riley v. Cty. of Cook*, 682 F. Supp. 2d 856, 861 (E.D. Ill. 2010) (applying *Leatherman* post-*Twombly*).   Because the Court recognizes that Plaintiffs may at this juncture lack the actual details concerning supervisors' interactions with employees accused of committing constitutional violations, the Court finds that Plaintiffs have satisfied the requirements of Rule 12(b)(6) by asserting factual allegations, that if proven, would establish the elements of municipality liability under § 1983.

Defendants additionally argue that naming the PHD Defendants in their official capacities is redundant to naming the City of Phoenix in their municipality liability claim, and the Court agrees.  Plaintiffs do not meaningfully dispute that the official capacity claims are redundant and duplicative to the municipality liability claim against the City of Phoenix.  (Doc. 76 at 10-11) (arguing solely that individual and official capacity claims are not redundant). When both a municipal officer and a local government entity are named as defendants in the complaint, a court may dismiss the officer as a redundant officer.  *See*, *e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (official capacity suits are in all respects to be treated as a suit against the entity); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004). It is therefore ordered **granting** Defendants' Motion to Dismiss Count Two against Defendants Stotler, Montgomery, Emmerson, Grittman, Fernandez, and Hogan. The Motion to Dismiss Count Two against the City of Phoenix is **denied**.

### C.      Count Three (Violation of A.R.S. § 33-1381)

Plaintiffs allege in Count Three that Defendants PHD, Bosshart, Fernandez and Navarrette retaliated against them in violation of A.R.S. § 33-1381 for Plaintiffs' "complaints to governmental agencies such as PHD and HUD, and for becoming members of an organizing tenants' unions and similar organizations such as Tenant Council." (Doc.

57, ¶ 234.)  Section 33-1381(A)(1)-(4) of the Arizona Residential Landlord and Tenant Act
("ARLTA") states:

> [A] landlord may not retaliate by increasing rent or decreasing
> services or by bringing or threatening to bring an action for
> possession after . . . (1) [t]he tenant has complained to a
> governmental agency charged with responsibility for
> enforcement of a building or housing code of a violation
> applicable to the premises materially affecting health and
> safety; (2) [t]he tenant has complained to the landlord of a
> violation under § 33-1324[6]; [3] [t]he tenant has organized or
> become a member of a tenants' union or similar organization;
> [or] (4) [t]he tenant has complained to a governmental agency
> charged with the responsibility for enforcement of the wage-
> price stabilization act.

If a landlord violates § 33-1381(A) by engaging in retaliatory conduct against the

tenant, the tenant is entitled to the remedies enumerated in A.R.S. § 33-1367 (the "remedies

statute").  *See* A.R.S. § 33-1367(B).  The remedies statute states:

> If the landlord unlawfully removes or excludes the tenant from
> the premises or willfully diminishes services to the tenant by
> interrupting or causing the interruption of electric, gas, water
> or other essential service to the tenant, the tenant may recover
> possession or terminate the rental agreement and, in either
> case, recover an amount not more than two months' periodic
> rent or twice the actual damages sustained by him, whichever
> is greater. . . .

Defendants PHD, Bosshart, Fernandez and Navarrette move to dismiss Count

Three, asserting that there is no independent claim for a violation of A.R.S. § 33-1381

without a corresponding eviction in progress. (Doc. 66 at 6.)   In support of their position

Defendants point to the remedies statute, which allows for actual damages if the landlord

has unlawfully removed or excluded the tenant from the premises or caused the interruption

of essential services.  (Doc. 66 at 6.)  Because Plaintiffs prevailed in their eviction hearing

and there is no longer a pending eviction action, Defendants argue that Plaintiffs have failed

---

[6] A.R.S. § 33-1324 provides, among other things, that the landlord shall comply with the
requirements of applicable building codes materially affecting health and safety, and that
the landlord shall make all repairs and do whatever is necessary to put and keep the
premises in a fit and habitable condition.

to state a claim under the ARLTA.  Plaintiffs respond that Arizona case law has recognized a tenant's right to recover tort damages under the ARLTA outside of an eviction action. (Doc. 76 at 17.)  The Court agrees with Plaintiffs.

In *Thomas v. Goudreault*, the Arizona Court of Appeals upheld a jury award for retaliatory damages under A.R.S. §§ 33-1381 and 13-1367 where the landlord had threatened eviction of the tenants in retaliation for their complaints about the condition of the property. 163 Ariz. 159, 163, 170 (App. 1989).  Although the court of appeals in *Thomas* did not address the argument Defendants raise here, it affirmed the jury award for retaliatory damages even though there had been no corresponding eviction action.  *Id.* Because the Court agrees that A.R.S. § 33-1381(A) provides a cause of action without a corresponding eviction-in-progress, Defendants' Motion to Dismiss on that basis is **denied**.

Defendants alternatively argue that there is no link between the eviction process (which ultimately did not result in an eviction), and the alleged retaliatory conduct.  (Doc. 66 at 7.)  Instead, Defendants claim that the eviction proceedings were instituted by Defendants as a result of Plaintiffs' failure to comply with the terms of their lease, including the requirement that Plaintiffs refrain from harassing and disturbing other residents.  (*Id.*) Because the SAC alleges that an independent panel determined Defendants did not have a valid reason to evict Plaintiffs, (Doc. 57, ¶ 167)—and because Defendants initiated the eviction proceedings after Plaintiffs complained to HUD and PHD about the no-smoking policy, and after Plaintiffs "clashed heads" with Defendants as Tenant Council activists— the Court finds that the SAC states a plausible claim to relief under A.R.S. § 33-1381(A). Defendants' motion to dismiss Count Three is **denied**.

### D.      Count Four (Violation of Phoenix City Codes 18-11.16 and 18-11.20)

Plaintiffs allege that Defendants PHD and Fernandez violated Phoenix City Codes ("PCC") sections 18-11.16(A)-(B) and 18.11.20 by coercing, intimidating, threatening and interfering with Plaintiffs "in and for exercising of their rights." (Doc. 57, ¶ 242.)  Plaintiffs further allege that Defendants PHD and Fernandez violated the PCC by discriminating against them because of their sexual orientation.  (*Id.* ¶¶ 239-244.)

Section 18-11.16(A) of the PCC prohibits discrimination in sales and rentals on the basis of sexual orientation.  PCC § 18-11.16(A) ("A person may not refuse to sell or rent after a bona fide offer has been made or refuse to negotiate for the sale of or otherwise make unavailable or deny a dwelling to any person because of . . . sexual orientation . . . .") Section 18-11.16(B) prohibits a person from "discriminat[ing] against any person in the terms, conditions or privileges of sale or rental of a dwelling, or in providing services or facilities in connection with the sale or rental, because of . . . sexual orientation . . . ." Phoenix City Code § 18-11.16(B).

Defendants argue that the allegations in the SAC do not show that Plaintiffs were discriminated against because of their sexual orientation.  (Doc. 66 at 9.)  Plaintiffs assert in response that "[t]here are a plethora of facts and allegations showing disparate and unfair treatment of Plaintiffs," (Doc. 76 at 18), but Plaintiffs do clarify those specific facts in their Response.  To the extent the SAC points to Dina Fernandez's mocking of Mr. Czyzewski's mannerisms, her reaction to Plaintiffs' concerns about the maintenance worker's homophobia, and Defendant Fernandez's statement about Plaintiffs' "lack of hygiene," these facts do not demonstrate that Plaintiffs were discriminated against in the services they were provided because of their sexual orientation.  Nor do the alleged facts show that Plaintiffs were denied a dwelling due to sexual orientation.

The Court next addresses Plaintiffs claim under PCC § 18-11.20, which states:

> A person may not coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this section and Sections 18-11.16 [discrimination in sales and rentals], 18-11.17 [publication of sales or rentals], 18-11.18 [inspection of dwelling], 18-11.19 [entry into neighborhood], 18-11.21[discrimination due to disability], 18-11.22 [residential real estate transactions] and 18-11.23 [brokerage services].

The Court agrees with Defendants that the SAC fails to allege facts related to Plaintiffs' exercise or enjoyment of their rights under the various subsections referenced

within PCC § 18-11.20.  (Doc. 66 at 9.)   As stated above, the alleged facts do not show a violation of PCC § 18.11-16.  Nor do they demonstrate that Defendants published any notice or statement indicating a preference, limitation, or discrimination based on sexual orientation, *see* PCC § 18-11.17, or that Defendants misrepresented to Plaintiffs because of their sexual orientation the availability of units for rent at Fillmore Gardens, *see* PCC § 18-11.18.  Similarly, the SAC does not allege facts related to an inducement to sell or rent, *see* PCC § 18-11.19; nor does it allege facts related to discrimination for disability, *see* PCC § 18-11.21.  Finally, the Court agrees with Defendants that PCC §§ 18-11.22 and 18-11.23, which apply to persons whose business involves engaging in residential real estate related transactions, do not apply to the Defendants as public housing entities or employees. (Doc. 66 at 9.)  Defendants' Motion to Dismiss Count Four is **granted**.

### E.      Count Five (Abuse of Process)

In Count Five, Plaintiffs allege that Defendant Magaard abused the injunction against harassment process against Mr. Czyzewski as a "continuation of her campaign" to harass them, inflict emotional distress upon Plaintiffs, and to oust them from the Tenant Council and Filmore Gardens.  (Doc. 57, ¶¶ 247, 248.)  The PHD Defendants move to dismiss this count in a footnote.  (Doc. 66 at 10, n.9.)  Although the PHD Defendants lack standing to contest the allegations against Ms. Magaard, the Court nonetheless notes the inadequacy of this count and orders it dismissed.  *See Sparling*, 864 F.2d at 638.

Arizona courts have described abuse of process as "an act done under the authority of the court for the purpose of perpetrating an injustice, i.e., a perversion of the judicial process to the accomplishment of an improper purpose."  *Fappani v. Bratton*, 243 Ariz. 306, 309 (App. 2017).  The elements of an abuse of process claim under Arizona law are: (1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings.  *Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, 257 (App. 2004).  "A party can demonstrate the latter element by 'showing that the process has been used primarily to accomplish a purpose for which the process was not designed.'"  *Id.* (*quoting Nienstedt v. Wetzel*, 133 Ariz. 348, 353 (App. 1982)).  An incidental motive of

spite or an ulterior purpose of benefit to the defendant is not enough. *Crackel*, 208 Ariz. at 889. Instead, a plaintiff must show that the defendant "took an action that could not logically be explained without reference to the defendant's improper motives." *Id*. Arizona interprets "process" as "the entire range of procedures incident to the litigation process." *Id*.

Here, the Court will dismiss Count Five because Plaintiffs cannot possibly obtain relief. *Sparling*, 864 F.2d at 638. After Plaintiffs prevailed in their eviction hearing, Ms. Magaard sought, but did not obtain, an injunction against harassment. Proof of abuse of process requires some act beyond the initiation of the lawsuit. *Joseph v. Markovitz*, 551 P.2d 571, 574 (App. 1976). At best, Plaintiffs have alleged that Ms. Magaard carried out the injunction process to its authorized conclusion (even though she may have done so with bad intentions). *Cf. id*. ("There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.") (citation omitted). In the absence of a claim of an improper act, the mere initiation of the injunction against harassment proceedings is not sufficient to maintain an action for abuse of process against Ms. Magaard. It is therefore ordered **dismissing** Count Five.

## F.    Count Six (Abuse of Process)

Count Six alleges that Defendants PHD, Magaard, Fernandez and Bosshart engaged in abuse of process when they initiated criminal prosecution against Plaintiff Czyzewski in order to remove them from the Tenant Council and Filmore Gardens. (*Id*. ¶ 254.) Plaintiffs further allege that these Defendants instituted the civil eviction proceedings against them for the improper purpose of ousting them from Tenant Council, and to effectively shut down Tenant Council altogether. (*Id*. ¶ 255.) Plaintiffs additionally assert that Defendant Fernandez and Bosshart obtained victims' rights documentation in the criminal case against Mr. Czyzewski for the improper purposes of using the documents to evict him and obtaining an injunction that prevented Mr. Czyzewski from conversing with management. (*Id*. ¶ 257.) Defendants respond that each allegation in this count fails as a matter of law because none of the Defendants' actions involved the use of a judicial process. (Doc. 66

at 12.)   The Court agrees with Defendants.

First, although Ms. Magaard did not move to dismiss this count, the Court finds that Ms. Magaard's decision to report the altercation between her and Mr. Czyzewski to the police did not constitute an act done under the authority of the court.  Plaintiffs cannot possibly win relief on their claim that Ms. Magaard engaged in abuse of a judicially sanctioned process by calling the police (and subsequently telling them that she did not desire prosecution). To the extent the SAC additionally alleges that Ms. Magaard engaged in abuse of process by participating in PHD's internal eviction proceedings, the Court finds that such participation did not constitute an act done under the authority of the court.

The Court similarly agrees that the role of Ms. Fernandez and Ms. Bosshart in reporting Mr. Czyzewski's alleged criminal conduct to police did not constitute an act done under the authority of the court.  (Doc. 66 at 12.)  Neither did the internal PHD eviction process.  (*Id.*)

Regarding Plaintiffs' claim that Defendants Fernandez and Bosshart listed Ms. Fernandez as a victim in the criminal case for the improper purpose of obtaining paperwork to use in the eviction hearing, the Court finds that Plaintiffs have failed to state a claim for relief.  Plaintiffs have not shown that the criminal case documents, which are presumably in the public record, would have been inaccessible to Defendants outside of the criminal court process.  Accordingly, the facts do not plausibly demonstrate that Defendants utilized the criminal action for the ulterior purpose of obtaining case documents for the eviction hearing.

Finally, regarding Plaintiffs' claim that Defendants Fernandez and Bosshart claimed to be "victims" in the criminal proceedings for the improper purpose of obtaining an injunction against Mr. Czyzewski, the Court finds that Plaintiffs have failed to state a plausible claim for relief.  When Ms. Fernandez and Ms. Bosshart elected to proceed as "victims," they did so in the context of reporting an alleged crime to police officers, which did not constitute an act done under the authority of the court.  While the criminal court may have subsequently entered an injunction against Mr. Czyzewski as part of the criminal

case, the decision to treat Ms. Fernandez and Ms. Bosshart as victims at that juncture of the criminal proceedings was made by the prosecutor, not Defendants.  Defendants Motion to Dismiss is therefore **granted**.

### G.     Count Seven (Preliminary and Permanent Injunction)

In Count Seven Plaintiffs ask the Court to temporarily and permanently enjoin all Defendants except Ms. Magaard from retaliating against Plaintiffs or any member of the Fillmore Gardens community for the assertion of their rights under the First Amendment and the Fair Housing Act.  (*Id*. ¶ 260.)   Plaintiffs request that all persons associated with the management, rental or administration of PHD properties be ordered to attend a training session about the First, Fourth and Fourteenth Amendments.  (*Id*. ¶ 63.)  They also ask that Defendants be ordered to have no participation in the audits of Tenant Council, and that they be required to establish a complaint policy for residents that enables them to raise concerns without fear of retaliation.  (*Id*. ¶ 267.)

Defendants argue that the Court has previously denied Plaintiffs' Motion for Preliminary and Permanent Injunction and that Plaintiffs have "disobeyed previous Court Orders requiring that Plaintiffs file a Motion, not merely include the request in the Complaint." (Doc. 66 at 19.)  The Court agrees with Plaintiffs, however, that the Court's prior order denying their request for a preliminary injunction, (*see* Doc. 37), does not foreclose the possibility of a permanent injunction after trial. (Doc. 76 at 19.)  Accordingly, the Motions to Dismiss Count Seven is **denied**.

### H.     Notice of Claim

Finally, Defendants move to dismiss all "allegations" relating to incidents that occurred before June 23, 2018, and all incidents occurring after December 20, 2018, for Plaintiffs' alleged failure to comply with Arizona's notice of claim statute, A.R.S. § 12-821.01.  (Doc. 66 at 5-6); (Doc. 80 at 2.)  A.R.S. § 12-821.01(A) requires persons who have Arizona state law claims against a public entity or a public employee to file the claims within one hundred eighty days after the cause of action accrues. A.R.S. § 12-821.01(A); *see also Mothershed v. Thomson*, No. CV-04-2266-PHX-JAT, 2006 WL 381679, at *7 (D.

Ariz. Feb. 16, 2006) (federal courts entertaining state-law claims against state entities are obligated to apply the state law notice-of-claim provision).  Any notice of claim that is not filed within one hundred eighty days after the cause of action accrues is barred.  A.R.S. § 12-821.01(A).   A cause of action accrues under this section when "the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." A.R.S. § 12-821.01(B).

Plaintiffs respond that Rule 12 only provides for the dismissal of *claims*, not allegations, and that Defendants failed to identify the specific claims they believe were filed in violation of Arizona's notice of claim statute.   (Doc. 76 at 15.)   Plaintiffs additionally argue that the notice of claim statute does not apply to their federal claims or their requests for equitable relief under state law. The Court agrees with Plaintiffs.

Plaintiffs sent their notice of claim to Defendants on December 20, 2018 and initiated this action on May 16, 2019.[7]  (See Doc. 66-3 at 3); (Doc. 1 at 2.)   Therefore, the 180-day marker for the accrual of state claims, counting backward from December 20, 2018, was June 23, 2018.  (Doc. 66 at 6.)  In their Motions to Dismiss, Defendants failed to identify which state law claims purportedly accrued prior to June 23, 2018.  Whether incidents occurred prior to June 23, 2018 is a separate inquiry from whether Plaintiffs' claims accrued before that date.   *See* A.R.S. § 12-821.01(B) (defining accrual). Defendants' Motion to Dismiss "allegations" that occurred before June 23, 2018, is **denied**. The Court further finds that the notice of claim requirement does not apply to the claims brought by Plaintiffs under federal law.  *Felder v. Casey*, 487 U.S. 131, 153 (1988) (state's notice of claim law cannot alter the outcome of § 1983 claims depending solely on whether they are brought in state or federal court within the same state); *see also Howland v. State*,

---

[7] The Court will consider the Notice of Claim because it was attached to the original complaint and is a matter of public record. *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1117 (9th Cir. 2018) ("The 'pleadings' include more than just the complaint.  We can consider 'exhibits attached to the Complaint or matters properly subject to judicial notice.'").

169 Ariz. 293, 295-298 (App. 1991) (applying A.R.S. § 12-821.01(A) only to state law claims). Accordingly, the Motion to Dismiss on this basis is **denied**.

**V.     CONCLUSION**

Accordingly,

**IT IS ORDERED dismissing** Counts One, Five, and Six against Defendant Donna Magaard. Donna Magaard is dismissed from this action as a Defendant; her counterclaim remains.

**IT IS FURTHER ORDERED granting** (part of Doc. 80) Defendant McAbee, Defendant Martin, and their spouses' Motion to Dismiss Plaintiffs' § 1983 Fourth Amendment claim (part of Count One). Count One is dismissed against the Officer Defendants and their spouses in its entirety.

**IT IS FURTHER ORDERED denying** (part of Docs. 66, 80) Defendants' Motion to Dismiss Plaintiffs' § 1983 First Amendment Association claim (part of Count One). This portion of Count One shall proceed against Defendants City of Phoenix, PHD, Stotler, Montgomery, Emmerson, Grittman, Fernandez, Hogan, Navarrette, and Bosshart.

**IT IS FURTHER ORDERED granting** (part of Docs. 66, 80) Defendants' Motion to Dismiss Plaintiff's § 1983 Retaliatory Prosecution claim against all Defendants (part of Count One).

**IT IS FURTHER ORDERED granting** (part of Docs. 66, 80) Defendants' Motion to Dismiss Plaintiff's § 1983 Retaliatory Arrest claim against all Defendants except the City of Phoenix (part of Count One).

**IT IS FURTHER ORDERED denying** (part of Docs. 66, 80) Defendant City of Phoenix's Motion to Dismiss Plaintiff's § 1983 Retaliatory Arrest claim against the City of Phoenix (part of Count One). The Retaliatory Arrest claim shall proceed against the City of Phoenix only.

**IT IS FURTHER ORDERED granting** (part of Docs. 66, 80) Defendants' Motion to Dismiss Plaintiff's § 1983 Procedural Due Process claim, related to the eviction proceedings, against all Defendants (part of Count One).

- 30 -

**IT IS FURTHER ORDERED denying** (part of Docs. 66, 80) Defendants' Motion to Dismiss Plaintiff's § 1983 Procedural Due Process claim, related to the termination of Mr. Czyzewski's employment (part of Count One).

**IT IS FURTHER ORDERED granting** (part of Docs. 66, 80) Defendants' Motion to Dismiss Plaintiff's § 1983 Equal Protection claim against all Defendants (part of Count One).

**IT IS FURTHER ORDERED denying** (part of Doc. 80) Defendant Stotler's Motion to Dismiss all remaining individual liability claims asserted against her in Count One.

**IT IS FURTHER ORDERED granting** (part of Docs. 66, 80) Defendants' Motion to Dismiss Count Two against Defendants PHD, Stotler, Montgomery, Emmerson, Grittman, Fernandez, and Hogan (part of Count Two).

**IT IS FURTHER ORDERED denying** (part of Docs. 66, 80) Defendant City of Phoenix's Motion to Dismiss Count Two. The City of Phoenix is the sole remaining Defendant in Count Two.

**IT IS FURTHER ORDERED denying** (part of Docs. 66, 80) Defendants' Motion to Dismiss Count Three.  This claim shall proceed against Defendants PHD, Bosshart, Fernandez, and Navarrette.

**IT IS FURTHER ORDERED granting** (part of Docs. 66, 80) Defendants' Motion to Dismiss Count Four.  Count Four is dismissed in its entirety.

**IT IS FURTHER ORDERED granting** (part of Docs. 66, 80) Defendants' Motion to Dismiss Count Six.  Count Six is dismissed in its entirety.

**IT IS FURTHER ORDERED denying** (part of Docs. 66, 80) Defendants' Motion to Dismiss Count Seven against all Defendants except Defendants McAbee and Martin. This claim shall proceed against Defendants City of Phoenix, PHD, Stotler, Montgomery, Emmerson, Grittman, Fernandez, Hogan, Navarrette, and Bosshart.

**IT IS FINALLY ORDERED granting** (part of Doc. 80) Defendants McAbee, Martin, and their spouses' Motion to Dismiss Count Seven against them (part of Count

Seven).  Defendants McAbee, Martin, and their spouses are therefore dismissed from this action entirely.

Dated this 23rd day of June, 2020.

*Michael T. Liburdi*

Michael T. Liburdi
United States District Judge