DEGNAN LAW, PLLC
David Degnan (AZ SBN 027422)
Mark W. Horne (AZ SBN 029449)
4105 N. 20th Street, Suite 220
Phoenix, Arizona 85016
(602) 266-0531
d.degnan@degnanlawaz.com
m.horne@degnanlawaz.com
*Attorney for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE STATE OF ARIZONA

| | |
|---|---|
| Gerald Bollfrass and Frank Czyzewski, a married couple; | Case No.: CV-19-04014-PHX-SPL |
| Plaintiffs, | **THIRD AMENDED COMPLAINT** |
| vs. | **(JURY TRIAL DEMANDED)** |
| The City of Phoenix, a municipal corporation; The City of Phoenix Housing Department, a federally funded public housing program; Cindy Stotler and Leslie Stotler, husband and wife; Dina Fernandez, an individual; Keon Montgomery and Cindy L. Montgomery, husband and wife; William Emmerson and Jane Doe Emmerson, husband and wife; Veronica Grittman and Richard G. Grittman, Jr.,husband and wife; Julie Bosshart, an individual; James Navarrette, an individual; Angela Hogan and Mark L. Hogan, husband and wife; John and Jane Does I -X; | (Honorable Michael T. Liburdi) |
| Defendants. | |

Plaintiffs Gerald Bollfrass and Frank Czyzewski, for their Third Amended Complaint against the above-named Defendants, hereby allege as follows:

## INTRODUCTION, JURISDICTION AND VENUE

1.     Plaintiffs Gerald Bollfrass ("Jerry") and Frank Czyzewski ("Frank") (collectively "Plaintiffs") are homosexual and are legally married.

2.     Plaintiffs reside at Fillmore Gardens, which is public housing owned and operated by Defendants the City of Phoenix and the City of Phoenix Housing Department (collectively "PHD") through their participation in the Federal HUD Public Housing Program, at 802 N 22nd Pl, Phoenix, AZ 85006.

3.     Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 3604, 42 U.S.C. § 12131, 42 U.S.C. § 1437, and the due process and equal protection clauses of the United States Constitution, for a judgment declaring that the defendants' policies and practices of retaliation against Plaintiffs for the exercising of their first amendment rights are unlawful.

4.     The Fair Housing Act 42 U.S.C. § 3601, et seq. extends the guarantee of equal housing opportunity to all individuals regardless of gender, color, national origin, sexual orientation and disability. Congress also authorized the Secretary of the United States Department of Housing and Urban Development to promulgate regulations to implement the Fair Housing Act. 42 U.S.C. Sections 3614 (a).

5.     Plaintiffs' claims arise under the Fair Housing Act, Title VIII of the Civil Act of 1968 as amended, 42 U.S.C. § 3601, et seq.; the United States Housing Act, 42 U.S.C. § 1437, et seq.; the First and Fourteenth Amendments to the United States Constitution; federal contracts; and 42 U.S.C. § 1983.

6. Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 1983, which provides redress for the deprivation, under color of state law, of rights, privileges and immunities secured to all citizens and persons within the jurisdiction of the United States by the Constitution and laws of the United States.

7. Venue is proper in this court.

## PARTIES

8. Plaintiffs reside in Arizona at a public housing facility provided by PHD known as Fillmore Gardens.

9. The City of Phoenix is a municipal corporation.

10. The City of Phoenix Housing Department is a housing authority created in accordance with the provisions of Arizona Public Housing Law.

11. PHD provides housing for eligible families, which include elderly persons with low income such as Plaintiffs.

12. PHD is a public entity, formed and designated and it and its officers and divisions are subject to civil suit and may be held independently or vicariously liable for the wrongful conduct of its divisions, agents, officers, and employees, including (interalia) all of the individually named defendants in this case.

13. Defendant Cindy Stotler, at all times relevant to this Complaint, is and was the Director for the City of Phoenix Housing Department. In that capacity she approved, adopted and oversaw the actions of all the Defendants in this case. The

actions taken by Defendant Cindy Stotler are the policy and/or custom of PHD. Defendant Cindy Stotler is named as a Defendant both in her individual capacity and her official capacity as Director for the City of Phoenix Housing Department. The actions and omissions of Cindy Stotler are the policy and/or custom of PHD under the circumstances of this case.

14.     Defendant Keon Montgomery, at all times relevant to this Complaint, is and was a Deputy Director for the City of Phoenix Housing Department.  In that capacity he approved, adopted and oversaw the actions of all the Defendants in this case.   The actions taken by Defendant Keon Montgomery are the policy and/or custom of PHD.  Defendant Keon Montgomery is named as a Defendant both in his individual capacity and his official capacity as Deputy Director for the City of Phoenix Housing Department.  The actions and omissions of Keon Montgomery are the policy and/or custom of PHD under the circumstances of this case.

15.     Defendant William Emmerson was the Deputy Housing Director for the City of Phoenix Housing Department from 2014 until August of 2017 and the Assistant City Prosecutor for the City of Phoenix from August of 2017 until the present. In those capacities he approved, adopted and oversaw the actions of all the Defendants in this case.   The actions taken by Defendant Keon Montgomery are the policy and/or custom of PHD.  Defendant Keon Montgomery is named as a Defendant both in his individual capacity and his official capacities as Deputy Director for the City

4

of Phoenix Housing Department and assistant prosecutor for the City of Phoenix. The actions and omissions of Keon Montgomery are the policy and/or custom of PHD under the circumstances of this case.

16. Defendant Veronica Grittman, at all times relevant to this Complaint, is and was the Housing Manager for the City of Phoenix Housing Department. In that capacity she is responsible for the daily oversight and day to day administration of the program. In that capacity she approved, adopted and oversaw the actions of all the Defendants in this case. The actions taken and omissions by Defendant Veronica Grittman are the policy and/or custom of PHD. Defendant Veronica Grittman is named as a Defendant both in her individual capacity and her official capacity as Housing Manager for the City of Phoenix Housing Department. Defendant Veronica Grittman approved and oversaw the decisions to have Plaintiff Frank illegally arrested/prosecuted and to illegally terminate Plaintiffs' tenancy.

17. Defendant Dina Fernandez, at all times relevant to this Complaint, is or was a Housing Supervisor for PHD. In that capacity she is responsible for the daily oversight, and day to day administration of the program. In that capacity she made the initial determination to have Frank evicted and to terminate Plaintiffs' tenancy while she the prosecuted the attempted illegal eviction of Plaintiffs. The actions taken or omissions by Dina Fernandez are the policy and/or custom of PHD under circumstances such as those in this case. Defendant Dina Fernandez is named as a

Defendant both in her individual capacity and her official capacity as Housing Manager for PHD.

18.    Defendant Angela Hogan, at all times material to this Complaint, is and/or was a Housing Supervisor or Deputy Director for PHD.  The actions taken and omissions by Angela Hogan are the policy and/or custom of PHD under circumstances such as those in this case.  Defendant Angela Hogan is named as a Defendant both in her individual capacity and her official capacities as Housing Supervisor and Deputy Director for PHD.

19.    Defendant James Navarrette, at all times relevant to this Complaint, is and was a Property Manager for PHD.  In that capacity, James Navarette prosecuted the attempted illegal eviction of Plaintiffs.  The actions and omissions by James Navarrette are the policy and/or custom of PHD under circumstances such as those in this case.  Defendant James Navarrette is named as a Defendant both in his individual capacity and his official capacity as Property Manager for PHD.

20.    Defendant Julie Bosshart, at all times relevant to this Complaint, is or was a Casework Supervisor and/or Program Administrator for PHD.  The actions taken and omissions of Julie Bosshart are the policy and/or custom of PHD under circumstances such as those in this case.  Defendant Julie Bosshart is named as a Defendant in her individual capacity and her official capacities as Casework Supervisor and Program Administrator for PHD.

21.     At all times material herein, Defendants Cindy Stotler, William Emmerson, Keon Montgomery, Veronica Grittman, Dina Fernandez, Angela Hogan, James Navarrette and Julie Bosshart had ultimate authority and responsibility for PHD and the actions of its officers and agents, and with the authority and responsibility to establish policy, practices, customs, procedures, protocols, and training for PHD. Their actions and/or inactions constitute actions of the PHD, as alleged herein. These Defendants are named herein in both their official and individual capacities. These Defendants have official, vicarious, direct, individual, and/or supervisory liability for PHD and its officers, agents, and employees.

22.     Ryan T. McAbee ("Ryan McAbee"), at all times relevant to this Complaint, is or was a police officer for the City of Phoenix and the City of Phoenix Police Department. Ryan McAbee is not named as a Defendant in his individual but in his official capacity as a police officer for the City of Phoenix and its police department. The City of Phoenix is the Defendant responsible and liable for the acts of Ryan McAbee as complained of herein.

23.     Defendant Calvin Martin, at all times relevant to this Complaint, is or was a police officer for the City of Phoenix and the City of Phoenix Police Department. Calvin Martin is not named as a Defendant in his individual capacity but in his official capacity as a police officer for the City of Phoenix and its police department. The

City of Phoenix is the Defendant responsible and liable for the acts of Ryan McAbee as complained of herein.

24.     Defendants Leslie Stotler, Cindy L. Montgomery, Richard G. Grittman, Jr. and Mark L. Hogan are the spouses of Defendants Cindy Stotler, Keon Montgomery, William Emmerson, Veronica Grittman and Angela Hogan, respectively.  The  these Spousal Defendants are included as Defendants because the wrongful conduct of these Defendants was engaged in for the benefit of their marital communities, thereby rendering the spouses and marital communities of Defendants liable for such conduct.

25.     At all times material herein, Defendants John Does I-X and Jane Does I-X (collectively "John Does") were officers, agents, and employees of the City of Phoenix Housing Department, the City of Phoenix Police Department, and/or the City of Phoenix acting within the scope of their employment and under color of law.  These Defendants engaged in wrongful conduct that allowed, caused, and/or contributed to cause the violations of Plaintiffs' rights. Their actions and/or inactions constitute actions of the Defendants and/or the City of Phoenix.

26.     The true names, capacities, and relationships, whether individual, corporate, partnership, or otherwise of all John and Jane Doe Defendants, Black Corporations, and White Partnerships, are unknown at the time of the filing of this Complaint, and are being designated pursuant to Ariz. R. Civ. P. § 10(f) and applicable federal and state law.  Plaintiffs further allege that all of the fictitiously named

Defendants were jointly responsible for the actions, events, and circumstances underlying this lawsuit, and that they proximately caused the damages stated in this Complaint. Plaintiffs will amend the Complaint to name the unidentified individuals once they have learned, through discovery, the identities and acts, omissions, roles, and/or responsibilities of such Defendants sufficient for Plaintiffs to discover the claims against them.

## FACTUAL BACKGROUND

27.     Plaintiffs Gerald Bollfrass and Frank Czyzewski, who are homosexual and a married couple, reside together at Fillmore Gardens.

28.     Both Plaintiffs are active members and advocates of the Fillmore Gardens community and they have a history of acting as officers and organizers of the Fillmore Gardens Tenant Council, resident unions and similar organizations.

29.     Plaintiff Frank Czyzewski does work as a "Senior Companion" under the "Senior Companion & Foster Grandparent Programs" which is sponsored by the Civic Service Institute at Northern Arizona University.  As a Senior Companion, Frank makes a difference in the Fillmore Gardens community by helping homebound seniors and disabled adults maintain independence.

30.     As a Senior Companion, Frank has to have a supervisor from PHD oversee him and with whom which Frank must communicate with on a regular basis.  Frank's Senior Companion supervisor is Defendant Julie Bosshart.

31.     Plaintiffs, as individuals, community activists, and as officers and organizers of Tenant Council and similar resident unions/organizations, have clashed heads with Defendants Veronica Grittman, Dina Fernandez, Julie Bosshart, William Emmerson, Keon Montgomery, James Navarrette, Angela Hogan and PHD due to unsanitary and dangerous property conditions, funding issues and Plaintiffs' attempts at getting PHD to implement and consistently enforce a smoke free policy and other regulations with letters and complaints to both PHD and the federal HUD.

## DEFENDANTS' ILLEGAL POLICIES AND PRACTICES

32.     Defendants' actions to selectively and maliciously arrest and prosecute Plaintiffs, terminate their public employment and benefits and have them evicted from public housing because of the content of their speech was unconstitutional and in violation of Plaintiffs' rights to free speech, to be free from malicious and selective prosecution, to be free from false arrest, to due process, and to equal protection, which are guaranteed by the United States Constitution.

33.     Defendants singled-out and prosecuted Plaintiffs because of the content of their protected speech, treated them differently than others similarly situated, and maliciously prosecuted and arrested them, but not others.

34.     At issue in this lawsuit are the damages and harm Plaintiffs have suffered as the result of Defendants' efforts to persecute and punish Plaintiffs and chill their free speech.

35.     It is well-established that government officials cannot misuse their offices or power to improperly regulate the content of speech or to selectively arrest/prosecute citizens because they present a view hostile to the government officials.  Yet, that is exactly what PHD did and set out to do here.  PHD is responsible for the Defendants' conduct and for its own conduct in permitting and ratifying the Defendants' conduct.

36.     Plaintiffs have been treated differently than other tenants by PHD management due to their sexual orientation and their community organization and activism.

37.     There was one employee of PHD named Jerrianne Mackenzie, who was a housing supervisor, that would treat Plaintiffs equally.  Plaintiffs sought out Jerrianne Mackenzie's assistance when they were being treated unfairly and differently by Defendants.

38.     Upon information and belief, pursuant to official policy and practice by PHD to disallow and criminalize protected speech and assembly of its public housing tenants the previous tenant council for Fillmore Gardens was disbanded after PHD took similar retaliatory actions against it and its board members including threats and/or allegations of financial impropriety.

39.     The destruction of the previous tenant council left tenant council moneys without an owner and PHD took possession of the moneys.

## DEFENDANTS' UNLAWFUL RETALIATION AND INTERFERENCE

40.    In 2017, Jerry, as President of Tenant Council, had disagreements with Defendant Veronica Grittman over delayed funding and the rights to the funds being held in a bank account from the previous tenant council.

41.    On March 22, 2017, Veronica Grittman sent Jerry an email claiming that Jerry had resigned and that processing the funding was delayed because "four members is not a full council."  (*See* Emails attached as Exhibit "A").

42.    On July 10, 2017, Veronica Grittman sent Jerry an email complaining that: "Every resident council suffers from the same issue, the same residents participate over and over."  Exhibit A.

43.    Prior to being a senior companion, Frank was employed as a Resident Assistant for PHD and was paid a salary of approximately $600 per month.

44.    Upon information and belief, PHD utilized a third-party vendor called Scott Business Group to employ Frank as a Resident Assistant.

45.    Scott Business Group used a policy that provided for "just cause" termination of employment and for discipline if employees were not incompliance with the policy.

46.    The Scott Business Group policy expressly incorporates that it is also the policy of Scott Business Group's clients and the policy was PHD's policy as well.

47.     Part of Frank's duties as a Resident Assistant was dealing with the maintenance person Robert Olvera who handled work orders.

48.     From day one Robert Olvera did not like Plaintiffs and was very distant from them.

49.     Robert Olvera's supervisor was Abraham Chaparro, who was the head of maintenance for Fillmore Gardens and he was responsible for its maintenance.

50.     On July 12, 2017, Frank called 911 regarding a resident laying on the floor and the resident was placed in an ambulance.  Frank complained to PHD that the apartment was hot and humid and that the air conditioning may be in need of service. Exhibit A.   Frank inquired with PHD "if we can do something to prevent possible personal health issue of our residences as it relates to our maintenance plan that is more focused on the well-being of the residents instead of money." Exhibit A.

51.     On July 21, 2017, PHD through William Emmerson, who was then Deputy Housing director for PHD, sent a "Letter of Concern" to Jerry stating that as President of the Resident Council Jerry had certain "responsibilities to advise and assist the PHD." (Letter of Concern attached as Exhibit "B").

52.     The Letter of Concern accuses Jerry of abusive and harassing communications and states that he has become "confrontational and accusatory."  *Id.*

53. Examples of these inappropriate communications given in the Letter of Concern include Jerry's complaint about a smoking area in which he states that he is "disgusted by the actions of management." *Id.*

54. The Letter of Concern accuses Jerry of being confrontational in Tenant Council meetings and it demands that Jerry "cease such conduct." *Id.*

55. The Letter of Concern threatens to shut down the Tenant Council. *Id.*

56. The Letter of Concern literally demands that Plaintiffs cease engaging in activities protected by the First Amendment and that such activities violate the policies of PHD.

57. On July 18, 2019 Frank text Dina Fernandez and Jerrianne Mackenzie for a key that he needed for a summer picnic that had been planned by the Tenant Council.

58. Defendant Dina Fernandez would not respond or help Frank get the key for the Tenant Council meeting.

59. Jerrianne Mackenzie, who was in a class at the time, text Frank to get the key from maintenance.

60. When Frank went to the maintenance office to get the key, Robert Olvera refused to give Frank the key and slammed the door in Frank's face.

61. Frank then texted Dina Fernandez and Jerrianne Mackenzie for help, stating: "I want Robert to say sorry for how he treated me. I do not appreciate how he treats me."

62.     PHD called the Phoenix police who arrived and took an incident report which states that no crime was involved.  (2017 Incident Report attached as Exhibit C).

63.     Robert Olvera told the police that he "doesn't take orders from Frank and that this isn't the first time Frank has used his position to get things."  *Id.*

64.     Defendant Dina Fernandez told the police that Frank "continually gets involved and tries to take control of the housing unit." *Id.*

65.     The City of Phoenix police officer that responded instructed Frank not to speak with Robert Olvera anymore even though he was the only maintenance person at Fillmore Gardens.

66.     After the Phoenix police left, Defendant Dina Fernandez knocked on Plaintiffs' door and instructed Frank to come to her office.  When Frank got there Defendants Dina Fernandez, Veronica Grittman and William Emmerson were all present.

67.     Defendant William Emmerson fired Frank as a Resident Assistant on the spot for allegedly being "unprofessional" without allowing Frank to present evidence.

68.     Defendant William Emmerson told Plaintiffs not to sue him and stated that he could fire Frank for whatever reason he wanted.

69.     On October 6, 2017, Defendant Dina Fernandez and the Fillmore Gardens maintenance supervisor Abraham Chaparro visited Plaintiffs' apartment to inspect Plaintiffs' complaints of cigarette smoke coming into their apartment.

70.    On October 9, 2017, Frank sent an email to Dina Fernandez to follow up on the inspection and Frank asked if there would be any resolve as to the source of what Dina Fernandez and Abraham Chaparro had said that they smelled.  Exhibit A.

71.    Frank's email also said "your enforcement of no smoking needs to be worked out better and that [Frank] would love to be involved with your revised plans." *Id.*

72.    Dina Fernandez responded to Frank's October 9, 2017 email in an email in which she categorizes the odor in Plaintiffs' apartment as "lack of hygiene," and she states that the "unpleasant" smell was present as soon as Frank "opened the door." *Id.*

73.    In response to Frank's request to be involved in revising PHD's enforcement policy, Dina Fernandez warned Frank that he should not "walk around the building" to "find the smell of cigarette smoke" because "it is harassing in nature and a violation of the lease." *Id.*

74.    On October 16, 2017, Jerry wrote to the local HUD office in Phoenix concerning the health of the Fillmore Gardens residents as it pertains to the lack of enforcement on the Smoke Free Policy.

75.    On October 17, 2017 Jerry sent an email to Dina Fernandez complaining of unfair and inconsistent treatment by PHD with regard to Plaintiffs and that PHD's response times to their work orders were taking longer than for other residents.  Exhibit A.

76. In that email Jerry suggested that this disparate treatment was due to "retribution" or "Robert's homophobia." *Id.* Jerry requested an explanation and suggested that Robert Olvera was the issue because all of the work orders went through him. *Id.*

77. On October 26, 2017, Dina Fernandez responded with an email stating that Jerry's statements were "harassing or threating in nature" and were a violation of his lease agreement. Jerry was warned that he should not make further complaints that are "unsubstantiated." *Id.*

78. On November 16, 2017 Jerry sent a letter to HUD regarding the Smoke Free Policy at Fillmore Gardens and PHD's lack of implementation and enforcement. (HUD Letters attached as Exhibit D).

79. On February 1, 2018, HUD responded to Jerry's November 16, 2017 letter stating that HUD "will continue to monitor the progress of these issues with the City of Phoenix to ensure steps are being taken to address them." *Id.*.

80. On April 10, 2018, Jerry received a Lease Violation Notice signed by Dina Fernandez stating that "it has come to our attention that you appear to have difficulty in maintaining the terms and conditions" of the lease. (Lease Violation Notice dated April 10, 2018 attached as Exhibit E).

81. The Notice contains two alleged violations the first of which is an argument that occurred between Jerry and his neighbor Steven Halpaus. Although the Notice itself

says that Steven Halpaus called Jerry a "stupid bastard," only Jerry was given a lease violation and Steven Halpaus was not given one.

82.     The second alleged lease violation was for Jerry referring to another resident as an "asshole," and the Notice states that "this is concerning because as President of the Resident Council [Jerry's] role is to represent all residents of the property and ensure equal treatment to all." *Id.*

83.     The Notice says that these actions violate the lease in that they are "criminal activity," "harassment" and "loud noises or other disturbances that cause annoyance or discomfort to other residents." *Id.*

84.     The Notice states that Jerry "can correct this violation by refraining using profanities, discriminatory and harassing terms and actions when speaking of and to others on the Property," and that "failure to comply . . . may result in lease termination." *Id.*

85.     In response to the Notice, Jerry wrote letters of apology to the two tenants involved in the Notice in order to help not be evicted by PHD.

86.     Jerry complained to HUD on April 15, 2018 in a letter regarding inconsistencies in the enforcement of the non-smoking policy and the general management at Fillmore Gardens. Exhibit D.

87.     Defendant Keon Montgomery then sent Jerry a letter on behalf of PHD stating "we are in receipt your letter addressed to Dr. Ben Carson" and to please accept

this letter of response on behalf of the Department." (Letter from Keon Montgomery attached as Exhibit "F"). The letter states that Jerry's "planned efforts described in your letter could be considered further harassment and a violation of the Lease."

88.     Jerry's April 15, 2018 letter resulted in a July 3, 2018 letter from HUD in which U.S. Secretary Ben Carson thanks Jerry for his concerns. Exhibit D.

89.     The July 13, 2018 HUD Letter states that PHD "acknowledged your concern regarding the maintenance issues" and "we expect that you and other residents will experience improvements in the day to day operations at the facility." *Id.*

## THE CONSPIRACY LEADING TO ILLEGAL ARREST AND EVICTION

90.     In 2018, Tenant Council began having problems with one of its board members Donna Magaard who had become friendly with Defendant Dina Fernandez.

91.     On March 13, 2018, Donna Magaard missed a social event sponsored and run by the Tenant Council and stated that her absence was due to a prior commitment with the PHD. (Texts with Donna Magaard attached as Exhibit "G").

92.     Unbeknownst to Plaintiffs and the Tenant Council, PHD through Defendants Dina Fernandez, Julie Bosshart and Veronica Grittman had solicited Donna Magaard as an agent for PHD to sit on the eviction "panel" when public tenants contest their evictions from public housing by PHD.

93.     Jerry resigned as President of the Tenant Council due to what he believed was abusive behavior towards him by Donna Magaard and his belief that Donna

Magaard and Defendant Dina Fernandez were trying to have him removed as President of the Tenant Council.

94.     After Jerry's resignation as President of the Tenant Council Frank became the President of Tenant Council.

95.     On June 2, 2018, Frank sent Defendant Dina Fernandez an email stating that it is Frank's first communication with her "as President of Resident Council" and that Frank would be posting their communications for review by all residents.   Exhibit A.  The email stated: "I hope you are willing to have productive and responsive actions to our inquiries;" and it requested an update from Defendant Dina Fernandez of the building directory. *Id.*   No response was received from Defendant Dina Fernandez.

96.     Frank was having consistent problems with board member Donna Magaard and on multiple occasions requested intervention by Defendant Julie Bosshart to mediate the problems pursuant to lease procedures.  (*See eg.* June 18, 2018 Emails with Julie Bosshart attached as Exhibit "H").  These requests for assistance went unanswered.

97.     On June 21, 2018, a Fillmore Gardens Manager's Meeting was held where the Tenant Council was to be introduced to the Fillmore Gardens tenants and PHD, those to be introduced included Jerry as the new Sargent in Arms and Frank as the President. Exhibit A. Defendant Dina Fernandez asked for and was sent a list of the new Tenant Council Members to be introduced. *Id.*

98.     Prior to the meeting, Donna Magaard and Frank text back and forth regarding her objection to Jerry's appointment as the Tenant Council's Sargent in Arms, during which Donna Magaard stated: "This is between you and I for now."  Exhibit G.

99.     At the June 21, 2018 meeting a verbal altercation erupted between Frank and Donna Magaard over Jerry's recent appointment to the Tenant Council as its Sargent in Arms.

100.    No physical contact was made during this altercation and Donna Magaard was the aggressor who initiated the dispute by banging her hands on the table, yelling at Jerry to "shut up" and asking Frank if he wanted to fight.

101.    On previous occasions where verbal shouting matches had occurred between Tenant Council members, Plaintiffs requested that Defendant Julie Bosshart speak with the persons about it but nothing was done by Defendants.  (*See* April 11, 2018 Email to Julie Bosshart attached as Exhibit "I").

102.    Defendant Dina Fernandez had Defendant James Navarrette bring Donna Magaard to the Fillmore Gardens rental office where, upon information and belief, James Navarrette had Donna Magaard fill out an incident report and call the police.

103.    The police were called to the scene and Defendants Ryan McAbee and Calvin Martin (collectively "the Officers") from the City of Phoenix Police Department arrived at Donna Magaard's apartment at Fillmore Gardens.

104. Donna Magaard told the Officers that PHD management wanted to be involved and Donna Magaard then brought the police officers to Defendant Dina Fernandez's office where Defendants Dina Fernandez and Julie Bosshart were both waiting.

## THE UNLAWFUL CONSPIRACY AND ARREST CAUGHT ON CAMERA

105. Defendant Ryan McAbee had his body camera on which captured video footage of the police interviews with Defendants Donna Magaard, Julie Bosshart and Dina Fernandez.

106. The video footage from the body camera shows Defendants Ryan McAbee, Calvin Martin, Julie Bosshart, Dina Fernandez conspire to have Frank arrested in order to support his eviction and obliterate Tenant Council.

107. Donna Magaard told the officers on camera that Frank is currently the president of the Board and that "two of us got into it."

108. Donna Magaard told the officers that her disputes with Plaintiffs was "all about the board in general."

109. Donna Magaard told the officers that she was not afraid of Frank and that she wished Frank had hit her.

110. Donna Magaard told the officers that she just wanted to report the incident and have it documented, and that she did not desire prosecution.

111. Donna Magaard declined the Officers' offer to accompany her back to her apartment, stating: "I don't think he's gonna do anything else, but I think he just reached a boiling point and it doesn't help when he's got his little posse that's kinda egging him on. "

112. Defendant Dina Fernandez told Donna Magaard "I know you turned in that draft incident report can you just take your time tonight tomorrow I'll be here tomorrow. Donna Magaard responded I'll let you see it before I turn it in. Dina Fernandez replied you can turn it in to me, I told James that you would turn it in to me.

113. Donna Magaard then left the room to go back to her apartment while Defendants Dina Fernandez and Julie Bosshart spoke to the Officers.

114. Defendant Dina Fernandez told the Officers that Frank was the aggressor and that she thought that Frank was going to hit Donna Magaard.

115. In describing the incident to the Officers, Defendants Dina Fernandez and Julie Bosshart mocked the way in which Frank raised his hands. Defendant Dina Fernandez stated "it was really weird" and Julie Bosshart responded; "we made fun of it." While Dina Fernandez, Julie Bosshart and the Officers all laughed, Ryan McAbee asked if it (the way Frank held his hands) "wasn't very masculine." Defendant Dina Fernandez while holding her hands up mockingly, responded: "Not at all, but I don't even think that any girl not even us would, like come on . . ."

116.     Defendant Dina Fernandez told the Officers about how Defendant Keon Montgomery had "fired [Frank] right here."

117.     Defendant Dina Fernandez told the Officers "I'm actually typing up a "thirty day" . . . an eviction notice."

118.     The Officers stated while laughing that they wanted Dina Fernandez and Julie Bosshart to reenact the incident, and Dina Fernandez stated that it "was pretty funny after words." Dina Fernandez then proceeded to mock the way Frank held is hands again and his pony tail.

119.     Defendant Dina Fernandez told the Officers that Shawna Toboro from the Fair Housing Center was going to "write me a statement" and that she was waiting for that statement for the eviction.

120.     Defendant Calvin Martin told Ryan McAbee "push disorderly too," and Ryan McAbee asked Dina and Julie if they wanted to "do anything about this." Ryan McAbee told Dina Fernandez that Donna Magaard "doesn't want to do anything about that" but that "it could be considered disorderly conduct."

121.     Defendant Julie Bosshart responded: "I don't know if this matters or not but their little gang, their bullies and so . . . could you [speaking to Dina Fernandez] hand out incident reports to everybody?" Dina Fernandez responded "no" and Julie Bosshart responded "so we don't know if anybody is going to step up and also write an incident report."

122.   Dina Fernandez said to Julie Bosshart: "I think you're right I don't think anyone is going to come forward." Julie Bosshart then reiterated; "so I don't know if that matters."

123.   Defendant Calvin Martin responded "seems like you guys could prosecute if you wanted to," and Ryan McAbee stated "if you wanted to prosecute obviously it's going to go different."

124.   Defendant Dina Fernandez responded that she needed to text Veronica Grittman about prosecution and wasn't sure if "that's the route she'll want."

125.   Defendant Julie Bosshart said that the incident was chaos to which Dina Fernandez responded: "That's my justification."

126.   Defendant Dina Fernandez told the Officers that if Veronica Grittman responded and said "yes go ahead" then she could tell the Officers if she's pressing charges.

127.   Defendant Ryan McAbee told Dina Fernandez that if she pressed charges then the Officers would arrest Frank and that if she said no "it would just be a report and that you can change your mind later on but it wouldn't go anywhere."

128.   While Dina Fernandez was texting back and forth with Veronica Grittman, Julie Bosshart said: "I'd arrest him just for how he held his hands."

129.    Dina Fernandez then had a smile on her face when Veronica Grittman text back and Dina Fernandez then stated: "Oh my gosh, she never does this, she says I wasn't there it's your call."

130.    Julie Bosshart and Dina Fernandez stared at each other and Julie Bosshart stated: "I think yes but can we talk through this."

131.    Ryan McAbee responded: "Has he been an issue for you guys," to which Dina Fernandez responded: "Him and his partner, like one of those annoying pains that just don't go away, it's disruptive it's toxic actually."

132.    Ryan McAbee then responded: "Thing you got to think about is he . . . move him from his position that way he's not in the meetings anymore and like . . ."  Dina Fernandez responded:

> It's not an immediate change as Julie said because it is through HUD and it's the city so we have to go through some channels and we have to send a letter to HUD and tell them that we no longer want to recognize this Tenant Council blah blah blah and then go through that channel.

133.    Dina Fernandez then got another text from Defendant Veronica Grittman which stated: "An arrest guarantees the eviction."  Dina Fernandez responded to the text with a big smile on her face, stating: "She knows me to well."

134.    Dina Fernandez stated: "You know the emails everybody gets, they're just bullies."  Julie Bosshart agreed stating "they are bullies."

135.   Officer McAbee then stated: "Well I can't tell you obviously what to do but if this is a continuing issue, and if what Donna says is true she feels threatened." However, Donna had told the Officers that she was not afraid of Frank, that she didn't think he'd do anything else and that she didn't want to press charges.

136.   Defendants Dina Fernandez and Julie Bosshart told the Officers that they were concerned Frank would be bailed out and back on the property the next day.  Dina Fernandez stated that if an arrest would support a "five day eviction" then she was "going for it."

137.   Dina Fernandez then stated: "The venom that's going to be in place once he is arrested, I'm already on their hit list anyway so it's not like it's a big deal."  The Officers responded respectively "yeah we are too" and "now you know how we feel."

138.   Defendant Dina Fernandez told the Officers that she didn't want to introduce Frank as the tenant council president but that she had to do and that Frank "just brainwashes everybody and he has followers . . ."

139.   Julie Bosshart told the officers part of her concern was that if nothing is done, Frank was "obviously going to blame" Donna Magaard and Dina Fernandez responded that Frank was "already doing that."

140.   Julie Bosshart and Dina Fernandez told the Officers that Donna Magaard did not do anything to instigate the fight, that she was very "well-behaved" and that she was one of "our few quote unquote normal."

141.   Defendant Dina Fernandez said she was waiting for Veronica Grittman to respond and that "if she says yes this is a five day if he gets arrested then I am going to go ahead . . . ."

142.   Defendant Dina Fernandez explained to the officers that a "five day" is an eviction that gives the tenant shorter time to move out.

143.   Upon information and belief, Veronica Grittman responded to Dina Fernandez by text stating: "If he didn't hit her it would be a hard sell to [our attorney], we can try the worst that can happen is she turns it to a thirty day."

144.   Julie Bosshart asked the Officers what would you do if you were us, to which officer McAbee responded: "If I were you I would want prosecution."

145.   Defendants Julie Bosshart and Dina Fernandez told the police that they desired prosecution for disorderly conduct and Dina Fernandez made herself an alleged "victim" in the criminal prosecution.

146.   Defendant Julie Bosshart told police and said that she stepped in between Donna Magaard and Frank because she knew Frank would not hit Julie Bosshart.

147.   Upon information and belief, Defendants Dina Fernandez and Julie Bosshart instructed Donna Magaard to press charges against Frank so that they could get him evicted.

148.   Based on the above lies and conspiracy of Defendants Frank was taken to jail and charged with threatening and intimidating and disorderly conduct in *State v. Czyzewski* Case No. M0741-5316025, in Phoenix Municipal Court.

149.   At the time the Officers made their decision to arrest Frank he was inside of his apartment with Jerry.

150.   The Officers knocked on the door to the apartment and ordered Frank to come outside of his apartment and then ordered him to "come over here."  Frank asked Jerry to come with him but the Officers would not allow Jerry or another resident to come with Frank.

151.   Both Frank and a third-party tenant who was a witness wanted to come with Frank and the Officers but the Officers stated that they were not allowed to come with Frank.

152.   The Officers forced frank down the hall where Ryan McAbee asked Frank, who was under arrest, questions about the incident without reading Frank his Miranda rights.

153.   As a result of the arrest Plaintiffs were forced out of their home at Fillmore Gardens for approximately two months and Frank was unable to make contact with Julie Bosshart or Dina Fernandez because they claimed to be "victims."

154.   Upon information and belief the original prosecutor on the case was William Emmerson who had previously sent the Letter of Concern to Plaintiffs for PHD as PHD's Deputy Director.

155.   The count of threatening and intimidating was dismissed on August 17, 2018 and the count of disorderly conduct was dismissed on November 16, 2018.

## THE UNLAWFUL AND RETALIATORY EVICTION AND INJUNCTION

156.   On June 25, 2018 Plaintiffs were served with an eviction notice signed by Defendant James Navarrette for Defendant Dina Fernandez and PHD as a result of the verbal altercation between Donna Magaard and Frank, and Plaintiffs were given 30 days to vacate the premises.  (*See* 30 Day Notice attached as Exhibit "J").

157.   Upon information and belief, other Fillmore Gardens residents who had been involved in similar and more serious altercations involving physical violence were not evicted by Defendants or arrested and prosecuted.

158.   Upon information and belief, Defendants Julie Bosshart, Dina Fernandez and Donna Magaard tried to gather evidence against Plaintiffs so that they could get Plaintiffs evicted by requesting letters and complaints from others including residents at Fillmore Gardens and from Shawna Torboro, who was the Project Manager at the Fair Housing Center.

159.   The letter Dina Fernandez had Shawna Torboro sign (*See* Shawna Letter attached as Exhibit "K") in support of the eviction, which was addressed to Dina

Fernandez personally, was so false, over-the-top and absurd that it was an obvious retaliatory fabrication by Defendant Dina Fernandez who wanted Plaintiffs out and the Tenant Council obliterated.

160.    The Shawna Letter attacks not only Plaintiffs, but all of the Tenant Council who were to be introduced at the Managers' Meeting. The Shawna Letter States:

> Other tenants told me that "this is how he is and "this is what they do", referencing Mr. Czyzewski and the tenant's council officers (a couple tenants gestured toward Mr. Czyzewski and the people sitting with/around him, whom I also didn't know by sight until they were later introduced. *Id.*

161.    As to the Tenant Council, the Shawna Letter further state:

> The other residents expressed to me that they are afraid of Mr. Czyzewski and his "clique" and don't speak up because they don't feel anything will be done about it and they don't want to be retaliated against. *Id.*

162.    Plaintiffs requested a formal hearing on the eviction notice and prior to that hearing they requested, multiple times and in writing, the documents on which PHD would rely at the hearing from Defendant James Navarrette.

163.    Although Plaintiffs had the right to these documents prior to the hearing under the lease and federal law and state law,[1] Defendants James Navarrette and PHD refused to provide the documents prior to the hearing.

164.    On July 31, 2018, the formal hearing was held at which Defendant Veronica Grittman attempted to act on the hearing panel despite that she was the one who approved

---

[1] *See* 24 CFR § 966.4 - Lease requirements at Section (L)(3)(ii) ("The notice shall also inform the tenant of the right (pursuant to § 966.4(m)) to examine PHA documents directly relevant to the termination or eviction.").

and was overseeing the eviction and her clear conflicts of interest due to her interactions with Plaintiffs. Veronica Grittman did this pursuant to a policy that requires PHD to have someone on the board to represent its interests during formal hearings.

165. Defendant James Navarrette prosecuted the case for PHD at which Plaintiffs saw several documents for the first time including the Shawna Torboro Letter and some victim rights documents about Defendant Dina Fernandez related to the criminal prosecution of Frank.

166. Three Fillmore Gardens residents were witnesses at the formal hearing who all witnessed the altercation up close. As was testified to, Dina Fernandez started the altercation by banger her hands on the table and yelling at Frank and Jerry and asking Frank if he wanted to Fight. Frank responded by banging his hands on the table, standing up and raising his fists.

167. The hearing panel unanimously set aside the eviction notice and directed PHD to give both Frank and Donna Magaard a simple lease violations due to what was a verbal altercation instigated by Donna Magaard, who was the aggressor, a simple lease violation. (*See* August 8, 2018 Final Hearing Decision attached as Exhibit "L".). Upon information and belief, PHD refused to give Donna Magaard a lease violation.

168. Defendant James Navarrette was informed both at the July 31, 2018 informal hearing and in the August 8, 2018 Final Hearing Decision that the 30 Day Notice was set aside and that Plaintiffs were not to be evicted.

169.	After the hearing, Defendant Dina Fernandez called Defendant James Navarrette on the phone and directed him to not allow Plaintiffs to leave with a copy of the documents PHD had used at the hearing.

170.	Plaintiffs requested from Defendant James Navarrette all documents the City of Phoenix had used at the Formal Hearing, he refused at first and later provided some but not all of the documents.

171.	On August 1, 2018, Donna Magaard applied for an injunction against harassment against Frank in Phoenix Municipal Court, Case No 18H5329559, specifically stating that Plaintiffs "were contesting their eviction and yesterday they won their case." (Application for Injunction Against Harassment attached as Exhibit "M"). Donna Magaard's purpose of obtaining the injunction was to oust Frank from Fillmore Gardens and the Tenant Council.

172.	Upon information and belief, Donna Magaard filed for the injunction after being told to do so by PHD.

173.	On August 14, 2018, the Phoenix Municipal Court held a hearing on Donna Magaard's Injunction Against Harassment and dismissed it. (Dismissal attached as Exhibit "N").

## DESTRUCTION OF TENANT COUNCIL AND PLAINTIFFS' ACTIVISM

174.	Despite having won their eviction hearing Defendants' illegal retaliation and attempts to destroy the Tenant Council continued.

175.   Defendant James Navarrette told Jerry in person that James Navarrette had the right to show Plaintiffs' tenant file to anyone he wanted due to a waiver Plaintiffs had signed allowing their attorney to obtain and review documents for the eviction hearing.

176.   On August 20, 2018, Defendant James Navarrette sent Jerry a letter stating that his August 16, 2018 payment was "not credited" towards their rental account as the result of "a civil legal action intended by this Department to regain possession of the unit you now occupy." (August 20, 2018 Letter from PHD attached as Exhibit "O.").

177.   On August 24, 2018, Jerry sent an email to Veronica Grittman and Keon Montgomery about how the board decided to use the Tenant Council funds, stating: The Council is alive and still in existence contrary to what you are saying." The email states that "the money belongs to the residents" and that the board would vote on what to do with the funds on August 28, 2018.

178.   On August 28, 2018, Jerry sent an email to Defendants Keon Montgomery, Dina Fernandez, Keon Montgomery, Cindy Stotler, Julie Bosshart and Dina Fernandez stating that he was going to send out a flyer about an upcoming Residents Council Meeting that was "not on the calendar due to the predetermined announcement by Management that the Resident Council board was defunct." The email concluded: "It is alive and well until the new Board is elected on September 11th, 2018."

179. On September 7, 2018, Defendant Dina Fernandez posted a threatening and intimidating letter ("the Posted Letter") up around Fillmore Gardens in which she accuses Jerry of forcing residents to participate in Tenant Council and questions the propriety and validity of the Tenant Council. (*See* Posted Letter attached as Exhibit "P").

180. The Posted Letter claims that due to two board member resignations "effective immediately," the board was potentially acting outside of its agreement with PHD and Tenant Council would "not be recognized as a duly elected resident council."

181. The Posted Letter demands evidence of a fully elected board before any further action by the Tenant Council, it states that any actions taken without a full board must be "reconsidered" upon election and it claims that the upcoming scheduled board election would not be valid or recognized by PHD.

182. The Posted Letter ominously concludes by accusing Tenant Council of improper use of tenant participation funds and it demands that all financial and meeting records be produced to PHD within fifteen days for an audit by PHD.

183. The Posted Letter, which was CCD to Cindy Stotler, Veronica Grittman, James Navarrette and Julie Bosshart remains posted behind glass around Fillmore Gardens as of this Second Amended Complaint.

184. On October 23, 2018, Plaintiffs filed Complaint with HUD against the City of Phoenix ("the HUD Complaint") alleging discrimination against them on the basis of sex and for retaliation and interference with their First Amendment rights.

185.  On February 11, 2019, Plaintiffs were issued "a 14-day notice of termination of your lease due to past due rent" even though Plaintiffs paid their rent. (*See* Fourteen Day Notice attached as Exhibit "Q").

186.  Jerry approached Defendant James Navarrette about the Fourteen Day Notice and what he needed to do to clear the matter up as he had paid rent, but James Navarrette was deliberately unhelpful and responded to Jerry with something nonsensical about gnomes in the basement.

187.  Jerry approached Defendant Angela Hogan about Eviction Notice and Defendant James Navarrette's response when Jerry tried to clear up the matter with him. Defendant Angela Hogan said she would look into it and get back to Jerry.

188.  On March 6, 2019, Defendant Angela Hogan asked to speak with the Plaintiffs regarding the 14-day notice of termination and the payment and on the same date Plaintiffs met with Defendant Angela Hogan in her office.

189.  At the March 6, 2019 meeting, Defendant Angela Hogan told Plaintiffs that she had reviewed Plaintiffs' bank statements in connection with this little check issue and that "there are additional deposits in your accounts from your annual that are not social security."

190.  Angela Hogan stated that the tenant council audit "was on the back burner because we didn't have a resident council."

191. During the March 6, 2019 meeting, in reference to the PHD's audit of the resident council, Angela Hogan told Plaintiffs that "you bet your bottom dollar you'll be held accountable for whatever you all do here," and that she's "seen fraud throughout resident counsels."

192. During the March 6, 2019 meeting, Defendant Angela Hogan also questioned Frank about the money he received from being Senior Companion even though such monies are not considered wage or income for purposes of subsidized housing.

193. Plaintiffs explained to Defendant Angela Hogan that these deposits were loans from Frank's family and that he had paid back that family member.

194. Defendant Angela Hogan asked for copies of the checks and for proof that the money had been paid back, which Plaintiffs provided.

195. Defendant Angela Hogan referred to her review of Plaintiffs' financial statements as a "supervisory audit." However, neither the City of Phoenix policies or procedures nor HUD regulations provide for such an audit.

196. The City of Phoenix policies and procedures provide for an annual recertification that is scheduled one year in advance and Plaintiffs had already completed their annual for 2019.

197. On March 7, 2019, Plaintiffs received a letter from HUD's Office of Field Asset Management and Program Administration on behalf of US Secretary Benjamin

Carson regarding Plaintiffs' "concerns on the implementation of the Non-Smoking Policy at Fillmore Gardens." Exhibit D.

198. The March 7, 2019 letter from HUD states:

> During the Department's recent communications with the City of Phoenix, HUD was informed of your lawsuit against the City of Phoenix. As a result, HUD will no longer be able to intervene while this issue is resolved through litigation. I hope this information is helpful to you.

199. However, there was no litigation at that time, and upon information and belief PHD lied to HUD to deprive Plaintiffs of HUD intervention and oversight.

200. On March 14, 2019, Defendant Angela Hogan emailed Frank demanding copies of (1) bank statements from September to December, (2) verification of the date account was opened, (3) Copy of the back of the check you provided to indicate the check was processed through the bank, and (4) Loan Agreement between you and Christine Czyzewski. Angela Hogan demanded that Frank provide the documents to Defendant James Navarrette by March 25, 2019. (*See* March 14, 2019 Email from Angela Hogan attached as Exhibit "R").

201. The attorney for Plaintiffs subsequently received a call from an attorney for PHD who said that PHD wanted to contact Plaintiffs' family members. The attorney asked if PHD should be going through Plaintiffs' attorney and not directly to Plaintiffs in light Plaintiffs' Notice of Claim against PHD. The attorney for Plaintiffs informed the attorney for PHD that PHD of course had to go through Plaintiffs' attorney.

202. The attorney for Plaintiffs never heard anything back from PHD, and on April 29, 2019 he emailed PHD's attorney and asked: "Can you please inform me of the nature and reason for the audit of my clients' finances and the status?" (*See* April 29, 2019 Email to Attorney Janis Hauge, Esq. attached as Exhibit "S").

203. To date, the financial audits of Plaintiffs and the Tenant Council are ongoing and Plaintiffs have not been informed of their status by PHD.

204. As result of the above actions by Defendants the Resident Council has been destroyed and Plaintiffs and other residents at Fillmore Gardens fear further participation or organizing in the Fillmore Gardens Community.

205. The Tenant Council funds are still sitting in an account and PHD will claim the funds as their own.

## Count I: 42 U.S.C. § 1983 VIOLATION OF FIRST, FOURTH AND FOURTEENTH AMENDMENT RIGHTS
(Against all Defendants)

206. Plaintiffs hereby incorporate all preceding paragraphs as though fully set forth herein.

207. "A public housing tenant's continued occupancy in a public housing project cannot be conditioned upon the tenants foregoing a constitutional right." *Carrera v. Yepez*, 6 S.W.3d 654, 667 (Tex. App. 1999).

208. Defendants have impeded the efforts of Plaintiffs to organize in violation of 12 U.S.C. § 1715z-1b(b)(4) and 42 U.S.C. § 1983.

209. Defendants have violated Plaintiffs rights to freedom of speech and association in violation of the First Amendment to the United States Constitution and 42 U.S.C. § 1983.

210. The April 10, 2018 Notice of Lease violation violates the First Amendment and is an unconstitutional prior restraint on Plaintiffs' freedom of speech.

211. Defendants have deprived Plaintiffs of HUD intervention and oversight they are entitled to under Federal Law.

212. Defendants' actions, including but not limited to the disparate treatment of Plaintiffs, the attempted terminations of Plaintiffs' lease, the lease violation, the termination of Frank as a Resident Assistant and the ongoing financial audits and threats are because of Plaintiffs' positions as officers and organizers of tenant council and their participation and advocacy in the Fillmore Gardens community.

213. Plaintiffs have been treated differently from other tenants because they were organizing the tenants and because they were exercising their First Amendment rights of freedom of speech and assembly.

214. Plaintiffs are subject to an ongoing "supervisory audit" that is illegal and which other tenants aren't subjected to.

215. As result of the above actions by Defendants the Resident Council was destroyed and Plaintiffs fear further participation or organizing in the Fillmore Gardens Community.

216.  Defendants violated Plaintiffs' First, Fourth and Fourteenth Amendment and due process rights by denying recourse to standard grievance procedures, not allowing Plaintiffs to review records prior to their formal eviction hearing, terminating Frank's employment as a Resident Assistant without notice or an opportunity to be heard, arresting Frank without probable cause and/or for the wrong reasons, and the other acts of intimidation in retaliation for Plaintiffs' exercising their First Amendment rights to freedom of speech and assembly.

217.  The attempted evictions, the illegal accountings and investigations of Plaintiffs and Tenant Council, the deprivation of standard grievance procedures, the leaks of confidential information, and the threatening and intimidating letters and other acts were initiated by and/or authorized to proceed by Defendants as agents, officers and employees of PHD.

218.  These acts along with the statements made by the Defendants that were about and directed to Plaintiffs and Fillmore Gardens Tenant Council shows a deliberate attempt to chill the public statements of the Plaintiffs and to disrupt their rights to organize and assemble under the First Amendment.

219.  Frank' arrest and incarceration was without probable cause and without a warrant.

220. Plaintiffs' arrest and incarceration was for an unconstitutional reason in that it was retaliatory for the exercise of heir first amendment rights and to suppress further exercise of their first amendment rights.

221. Defendants' singling out of and disparate treatment of Plaintiffs for being homosexual violates the equal protection clause of the Fourteenth Amendment in that it discriminates against them for their gender.

222. Defendants' singling out of and disparate treatment of Plaintiffs for being community organizers and members of Tenant Council violates the equal protection clause of the Fourteenth Amendment.

223. The Defendants conspired with one another to deprive Plaintiffs of these rights and are liable as co-conspirators.

224. Donna Magaard had a meeting of the minds with the PHD Defendants to have Frank arrested in retaliation for exercising his First Amendment rights after she previously declined to press charges against Frank.

225. PHD directed the Officers to return to Donna Magaard's apartment in order to convince her to press charges so that Frank would be arrested, evicted and the Tenant Council destroyed.

226. Donna Magaard had a meeting of the minds with PHD to deprive Frank of his constitutional rights and is liable along with the PHD Defendants for conspiracy under Section 1983.

227. Upon information and belief, after Donna Magaard declined to press charges, Donna Magaard then was contacted by PHD and the Officers and had additional conversations with PHD and the Officers regarding the City of Phoenix's desire to press charges and oust Frank and the Tenant Council and PHD and the Officers informed Donna Magaard that they wanted to press charges in connection with the conspiracy.

228. In arresting Frank after PHD and Donna Mogaard's change of hear in pressing charges at the direction of PHD, the Officers arrested Frank and in doing so Officer Ryan McAbee stated:

> Okay. Here's what's goin' on. You're being arrested today for threatening and intimidating as well as, um, disorderly conduct. Okay? For what you did in the meeting, um, people want prosecution for that. So what would you like to take with you today?

229. When Officer Ryan McAbee said "people want prosecution," he was referring to PHD and Donna Magaard who decided to press charges at the urging of PHD and with the joint goal of illegal retaliation for the exercise of and the suppression of Plaintiffs' constitutional rights.

230. Plaintiffs have been deprived of their property, liberty and reputation by the Defendants' illegal conduct and have suffered damages in an amount to be proven at trial.

231. Defendants acted with evil hand and mind and Plaintiffs are entitled to punitive damages and compensatory damages to be proven at trial.

## Count II: 42 U.S.C. § 1983 Unconstitutional Policies, Customs and Failure to Train
### (Against PHD, Cindy Stotler, Keon Montgomrey, William Emmerson, Veronica Grittman, Dina Fernandez and Angela Hogan)

232.  Plaintiffs hereby incorporate all preceding paragraphs as though fully set forth herein.

233.  At all times material hereto, Defendants Cindy Stotler, William Emmerson, Keon Montgomery, Veronica Grittman, Dina Fernandez, Angela Hogan, James Navarrette and Julie Bosshart were official policy makers for PHD.  The foregoing Defendants had the authority and responsibility to establish policy for the PHD to properly supervise and train the officers, agents, and employees of PHD.  Their actions are the actions of PHD.  Their actions are the actions of PHD and they were acting under color of law at all times material hereto.

234.  These Defendants were acting under color of law and have oversight and supervisory responsibility over the investigation, processing, handling, and management of tenants and the proper screening, hiring, training, retaining, and supervision of the officers, employees, and agents with responsibility.

235.  The wrongful conduct of these Defendants alleged herein this Complaint was undertaken with malice and/or with improper and unconstitutional motives in an attempt to deter speech and conduct protected by the Constitution. Plaintiffs were investigated, prosecuted, arrested, and/or jailed by Defendants for improper unconstitutional motives, were treated differently than others similarly situated, were

subjected to improper abuse of process and power for improper motives, and were arrested and jailed without probable cause and/or for improper motives. 152. Plaintiffs were subjected to Defendants' wrongful and unconstitutional conduct in a particularly egregious, conscience-shocking manner.

236. The acts and omissions of these Defendants, acting in their individual capacities and under color of law, were malicious, punitive, in reckless disregard of Plaintiffs' rights and the rights of all public housing tenants, and/or in an effort to intentionally deter conduct and speech protected by the Constitution.

237. PHD's policy of prohibiting constitutionally protected activity

238. As a result, punitive damages in an amount to be determined by a jury should be awarded against these Defendants.

### Count III: VIOLATION OF A.R.S. § 33-1381
(Against Defendants PHD, Julie Bosshart, Dina Fernandez and James Navarrette)

239. Plaintiffs hereby incorporate all preceding paragraphs as though fully set forth herein.

240. A "landlord may not retaliate" by "decreasing services or by bringing or threatening to bring an action for possession" after "the tenant has complained to the landlord of a violation under section 33-1324" or after "the tenant has organized or become a member of a tenants' union or similar organization." A.R.S. § 33-1381(A)(2)-(3).

241. Defendants retaliated for Plaintiffs' complaints to governmental agencies such as PHD and HUD and for becoming members of and for organizing tenants' unions and similar organizations such as Tenant Council and for the filing of the HUD Complaint against the City of Phoenix.

242. Further, the Defendants coerced, intimated, threatened and interfered with Complainants in and for exercising their rights.

243. Pursuant to A.R.S. § 33-1381(B), Plaintiffs are entitled to recover an amount not more than two months' periodic rent or twice the actual damages sustained by him, whichever is greater.

### Count IV: VIOLATION OF CITY CODES 18-11.16 AND 18-11.20
(Against Defendants PHD and Dina Fernandez)

244. Plaintiffs hereby incorporate all preceding paragraphs as though fully set forth herein.

245. Phoenix City Code Section 18-11.16(A) provides that a person may not make unavailable or deny a dwelling to any person because of sexual orientation.

246. Phoenix City Code Section 18-11.16(B) provides that a person may not discriminate against any person in the terms, conditions or privileges of sale or rental of a dwelling, or in providing services or facilities in connection with the sale or rental, because of sexual orientation.

247. Phoenix City Code Section 18-11.20 provides that person may not coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or

46

having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this section and Section 18-11.16.

248.    Phoenix City Code Section 18-11.33 provides Plaintiffs with a private right of action to enforce Section 18-11.16 through a civil complaint regardless of any administrative procedures for enforcement.

249.    The Defendants coerced, intimated, threated and interfered with Plaintiffs in and for exercising their rights.

250.    When Jerry complained of homophobia, Defendant Dina Fernandez told Jerry that this was a violation of his lease and that he should not make further "unsubstantiated" complaints.

251.    The disparate treatment and attempted eviction of Plaintiffs, the mocking of Frank by Dina Fernandez for the way he held his hands, the reactions to Plaintiffs' concerns of possible homophobia and Defendant Dina Fernandez's statement that the smell of cigarette smoke in Plaintiffs' apartment was due to their "lack of hygiene," all show violations of Section 18-11.16 by the Defendants.

252.    Pursuant to Phoenix City Code Section 18-11.33, Plaintiffs are entitled to actual and punitive damages, reasonable attorney fees and court costs as well as permanent and temporary injunctive relief.

## Count VI: PRELIMINARY AND PERMANENT INJUNCTION

(Against all Defendants)

253. Plaintiffs hereby incorporate all preceding Paragraphs as if fully set forth herein.

254. Defendants should be temporarily and permanently enjoined from retaliating against Plaintiffs or any member of the Fillmore Gardens community in any way due to their assertion of their own rights and/or any actions they may have taken to aid others in the exercise of their rights under the First Amendment and the Fair Housing Act.

255. Defendants should be temporarily and permanently enjoined from interfering with or otherwise discouraging tenants in the exercise of their rights to organize by way of a tenant council or similar organization.

256. Defendants should be temporarily and permanently enjoined from discriminating against public housing tenants on the basis of sexual orientation.

257. Defendants should be ordered to ensure that each Defendant, and all persons associated with the management, rental, or administration of Defendants' properties, including all caretakers and maintenance workers, shall attend a training session regarding the requirements of the First, Fourth and Fourteenth Amendment with respect to their public housing tenants and PHD's public housing program.

258. Defendants should be ordered to ensure that each Defendant, and all persons associated with the management, rental, or administration of Defendants' properties,

including all caretakers and maintenance workers, shall attend a training session regarding discrimination on the basis of sexual orientation and related legal protections.

259.   Defendants should be ordered to refrain from using the outstanding Tenant Council moneys and to give such funds to the next Tenant Council at Fillmore Gardens.

260.   Defendants should be ordered that the named Defendants not have any participation in participating in audits or annual reviews of Plaintiffs' and or the Tenant Council.

261.   The Defendants should further be ordered to establish a complaint policy, which will afford tenants of all units owned (in whole or in part), managed and/or operated by Defendants the opportunity to raise concerns about the practices of Defendants, their employees and agents that relate to the rights afforded by the First Amendment and Fair Housing Act without fear of retaliation.

### Count VII: FAIR HOUSING ACT 42 U.S.C. §3601 *et. seq.*
(Against Defendant PHD)

270.   Plaintiffs hereby incorporate all preceding Paragraphs as if fully set forth herein.

271.   42 U.S.C. §3604(b) provides that it is unlawful to discriminate against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling because of sex.

272.   Section 818 of the Fair Housing Act and 24 CFR § 100.400 provide that it is unlawful for Defendants to retaliate against Plaintiffs for exercising their rights under

the Fair Housing Act including for their filing of the HUD Complaint against Defendants.

273.    Defendants retaliated for Plaintiffs' complaints to governmental agencies such as PHD and HUD and for becoming members of and for organizing tenants' unions and similar organizations such as Tenant Council and for the filing of the HUD Complaint against the City of Phoenix.

274.    Defendant City of Phoenix is violating Plaintiffs' rights under the Fair Housing Act, §3604(b) by:

a.  Discriminating against Plaintiffs because of their gender in the terms, conditions and privileges of residing in Defendant's facilities and in the provision of services and facilities in connection with those dwellings;

b.  Restricting and attempting to restrict Plaintiffs of their gender, their choice to reside at Plaintiffs' dwellings so as to discourage and obstruct choices in the that community and neighborhood;

c.  Coercing, intimidating, threatening and interfering with Plaintiffs or their residents because of their gender, in the exercise and enjoyment of their right to reside at Plaintiffs' dwellings;

d.  Defendant participated in in the discrimination against Plaintiffs and has cultivated a culture where discrimination has become the norm;

e. As a direct and proximate result of Defendants' actions and disregard for Plaintiffs' rights to be free from discriminatory conduct based on gender; Plaintiffs have suffered damages including the indignity of discrimination, and severe anxiety about their future, all resulting in disruption of their personal lives and loss of enjoyment of ordinary pleasures of life.

f. As a direct proximate result of the intentional conduct of Defendants, Plaintiffs have suffered injury and will continue to suffer injury.

275. 42 U.S.C.S. § 3613(a)(1) provides Plaintiffs with the right of civil action for the discriminatory housing practices and § 3613(c)(1) provides Plaintiffs with the right to their actual and punitive damages against Defendants, as well as injunctive relief.

276. Plaintiffs are entitled to damages, punitive damages in an amount to be proven at trial as well as injunctive relief enjoining further sex discrimination and requiring PHD and its agents and employees to undergo training on the prevention of sex discrimination.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs request that the Court:

A. **AWARD** all damages Plaintiffs are entitled to, including but not limited to general damages, special damages, consequential damages, emotional distress damages, damages awarded under 42 U.S.C. § 1988, A.R.S. § 33-1381, Phoenix City Code

Section 18-11.16 and Phoenix City Code Section 18-11.20, jointly and severally, as will

compensate Plaintiffs fully for the damages caused by the Defendants' conduct;

      B.      **AWARD** punitive damages to Plaintiffs;

      C.      **AWARD** attorney's fees, pursuant to 42 U.S.C. § 1988 and/or 42 USCS §

3613(c)(2);

      D.      **AWARD** preliminary and permanent injunctive relief; and

      E.      **GRANT** such further relief as this Court may deem just and proper.

  **Dated** this 12th day of February, 2021.

**DEGNAN LAW, PLLC**

By  */s/ Mark W. Horne*
          Mark W. Horne
          *Attorney for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2021, I electronically submitted the attached document to the Clerk's office using EMF/ECF system for filing and electronically served the same to the following recipient:

Kathleen L. Wieneke, Bar #011139
Christina Retts, Bar #023798
**WIENEKE LAW GROUP, PLC**
1095 West Rio Salado Parkway, Suite 209
Tempe, Arizona 85281
Email: kwieneke@wienekelawgroup.com
Email: cretts@wienekelawgroup.com
*Attorneys for the City of Phoenix Defendants*


*/s/ Alex O. Devereaux*